AGAWAM BANK *v.* STREVER *et al.*

Where the makers of a note, signed by them for the accommodation of others, deliver it to the latter, it is an inference of law, in the absence of any further evidence of authority or restriction, that they for whose accommodation it was made may put it to any use for their benefit of which it is capable.

A note thus made, payable to a bank on demand, may be pledged by the principals as a continuing guaranty for future loans, to be made to them by the bank, until the sureties terminate their responsibility by notice.

Where, in such a case, the principals, D. & H., delivered the note to the bank with a written memorandum thereon that it was "left as collateral security for all liability *incurred* by D. & H.," evidence is admissible, for

the purpose of arriving at the intent of the parties in the hypothecation, that D. & H. were, at the time, under no liability to the bank.

The words "*all* liability" in the contract of hypothecation import a continuing guaranty, and not a security for a single sum or exhausted when the loans equal the amount of the note.

APPEAL from the Supreme Court. The plaintiff, a corporation under the laws of Massachusetts, brought its action upon the promissory note following:

"$4000.                  KINDERHOOK, *September* 23, 1847.

"On demand, for value received, we jointly and severally promise to pay F. S. Bailey, cashier, or order, four thousand dollars, at the Agawam Bank, Springfield, Mass.

> "ISAAC S. DOANE,
> "HENRY HOYSRADT,
> "WILLIAM STREVER,
> "JOHN HOYSRADT,
> "ADAM A. HOYSRADT."

Averring that the note was delivered to Bailey, the plaintiff's cashier, for its benefit, and to be held by it as collateral security for all liability incurred by Isaac S. Doane, or by Doane & Hoysradt, to the plaintiff, and that thereafter Doane & Hoysradt became liable for the amount of two drafts drawn by them, payable to their own order, on and accepted by Otis Braman, for $1,000 each, which were unpaid, protested, &c. Judgment was demanded for $2,000, with interest. Strever, John Hoysradt and Adam A. Hoysradt defended, alleging in their answer that they signed the note at the request of Henry Hoysradt as sureties for him and Isaac S. Doane, for the sole purpose of enabling them to raise $4,000 at the Agawam Bank, or for the purpose of giving them credit for that amount, and no more, at such bank; that it was understood and agreed at the time of signing, between them and Henry Hoysradt, that the note was to be thus used and that when said $4,000 had

been raised upon it and paid, the liability of the defendants thus answering should cease; that Doane & Hoysradt did very soon after procure from the plaintiff, upon the credit of said note, $4,000, which they subsequently paid, and the liability of the defendants became thereby extinguished.

The trial was before Mr. Justice GOULD, at the Albany circuit. The plaintiff proved, under exception, that the note was brought to the bank by Mr. Doane, who left it as collateral security to the bank for loans, making and signing a memorandum thereon as follows:

"The above note is left as collateral security for all liabilities incurred by Isaac S. Doane, or Doane & Hoysradt, to the Agawam Bank.

(Signed)        "I. S. DOANE,
                "DOANE & HOYSRADT."

Doane and his partner, Henry Hoysradt, were dealers in grain, buying and selling. They were under no liability to the bank at the time the note was thus left with it, but they incurred liabilities on the credit of the note, and continued to do so down to the time of drawing the drafts mentioned in the complaint. About $30,000 was thus loaned to and repaid by them. The bank never discounted the note but made repeated loans in sums of $1,000 each to Doane & Hoysradt; the sureties on the note never having any of the money. The last loan, to obtain payment of which the bank sought to enforce the liability of the sureties upon the note in suit, was made February 13, 1849.

John Hoysradt, Adam A. Hoysradt and William Strever were severally examined, each as a witness his co-defendants, and gave testimony tending to prove that each of them signed the $4000 note, with a view to its being discounted, and the avails used in the business of Doane & Hoysradt, and without a view to its being used as collateral security to any other obligation. Neither of them testified to any

agreement restricting the manner of using it, nor to any understanding of the matter except that which he individually had, nor to any communication thereof to his co-defendants. This testimony was subsequently stricken out by the judge, on the application of the plaintiff, and the defendants took an exception.

The defendants moved for a nonsuit, which was refused, and they took an exception. They then asked the judge to submit to the jury the question of fact as to what the contract was at the time of the making of the note ; as to the use to be made of it, and whether that agreement was not to raise $4,000 as one transaction, the defendant's liability to cease when one loan was made and repaid. The judge declined to do so, and the defendants excepted. The judge directed a verdict for the plaintiff, which was rendered. The judgment entered thereon was affirmed at general term in the third district, and the defendants appealed to this court.

*John H. Reynolds,* for the appellants.

*Nicholas Hill,* for the respondent.

SELDEN, J. This case is to be distinguished from a class of cases to which it bears some analogy, but from which it nevertheless materially differs. Where a valid existing obligation is assigned as collateral security for a debt to be contracted, the security assigned is entirely distinct from and in no manner dependent upon or modified by the contract by which it is pledged as security, or that by which the debt to be secured is subsequently created. They constitute separate and independent contracts, and not different parts of one and the same contract. As to the time of its enforcement, and the amount to be collected or recovered upon it, the obligation assigned is governed exclusively by its own terms. Whether the debt to which it is collateral

is more or less, or whether it is due or not due, is of no importance in a suit upon it.

It would be the same, I apprehend, with a collateral security which had no valid existence prior to its assignment, provided it consists of an obligation running to the party who assigns it, or some person other than the one who holds it as security. If a mere accommodation note, given for the purpose of being used as collateral security for a loan, and made payable to the party for whose accommodation it is given, be assigned to one who advances money upon the faith of it, the holder may bring a suit and recover upon such note, whenever by its terms it is due, whether the money loaned has become payable or not; and may recover the whole amount specified in the note, although it may exceed the amount loaned. In this case, as well as that of an assignment of a preëxisting security, the contracts are separate and distinct, there being no direct privity between the makers of the note and the party who takes it as security for the loan.

But the present case is obviously different from either of these. Here the note used as collateral security is made payable to the bank, or to its cashier for its benefit, which is the same thing. The contract, therefore, is directly between the makers of the note and the party advancing the money upon the faith of it. What then is that contract? Is it an absolute agreement that the makers will pay to the bank the sum of $4,000 on demand? Not at all. The note was presented to the bank by the makers themselves, or by one of them, which, if he was authorized to do what he did, is the same in effect; since Doane, in depositing the note with the bank, must be regarded as having acted or assumed to act as the agent of the other makers. He was not assigning to the bank a security purporting to have been previously made, but was creating a security which avowedly had no previous existence as such. There was no contract, even in form, by the makers of the note,

with any party except the bank; and that contract was made, not when the note was signed, but when it was delivered to the bank.

Of course, then, the terms agreed upon when the deposit was made, were terms agreed upon between the bank and the makers of the note, provided the agent did not exceed his authority; and as the note acquired its validity at that time, and by virtue of those terms, the whole arrangement is, upon well settled principles, to be taken together as constituting but a single contract. Consequently, the absolute terms of the note are to be regarded as modified by the conditions of the simultaneous agreement to hold it merely as collateral to the loans to be made upon the faith of it. Although payable on demand, no suit could be maintained upon it until the debt for which it was held as security had become due; and no more could be recovered than the amount of such debt.

It is plain from what has been said, that where a security is deposited or assigned, not by the party liable upon it, but by a third party as collateral to some other indebtedness, no objection can be made to the admissibility of the conditions of such assignment or deposit on the ground of a conflict between those conditions and the terms of the security. But where, as in this case, the deposit or pledge and the collateral security itself are made by one and the same party, at one and the same time, a question might arise whether the other portion of the agreement, if by parol, could be received to vary the terms of the written obligation. If, however, any such question could have arisen in this case, after the introduction of the memorandum signed by Doane, it is effectually disposed of by the admissions in the pleadings. The complaint alleges in substance that the note was given, not for the absolute payment of $4,000, according to its terms, but as collateral security for such sums as might be loaned upon the faith of it; and the answer, in averring that it was executed for the purpose

of giving Doane & Hoysradt credit at the bank to the amount of $4,000, admits, to a limited extent, the truth of the allegation. The defence set up in the answer is, not that the note itself expresses the true and only terms of the agreement between the parties, and that unless the money was raised by a direct sale or discount of the note the defendants were not liable; but that when the sum of $4,000 had been once advanced upon the credit of the note and repaid, their liability was at an end.   Having thus admitted that the real terms of agreement between them and the plaintiffs are not expressed by the note, the appellants have opened the door to any legitimate evidence by which that agreement can be established.

The main issue to be tried then was, whether the note was held by the bank as security for a single sum of $4,000 only, or as a continuing guaranty; and this depended, first, upon the import of the agreement made by Doane when the note was left with the bank; and, secondly, upon his authority from the other makers of the note to enter into that agreement.

The first position taken by the defendants' counsel on this subject is, that by the true construction of the written memorandum signed by Doane upon leaving the note with the bank, which memorandum must be regarded as embracing the contract between the parties, the note was to be held only as security for liabilities previously incurred, and not for such as might thereafter accrue.

The language of that memorandum is as follows: "The above note is left as collateral security for all liabilities *incurred* by Isaac S. Doane or Doane & Hoysradt to the Agawam Bank."   Now it is true that upon a strict grammatical construction of these terms, they would be held to embrace only liabilities which had been already incurred. The word "incurred" being in the past tense, when used without other words to modify its meaning, would in strictness relate exclusively to past transactions.   Were this

memorandum therefore to be construed by itself, without the aid of any extrinsic fact or circumstance whatever, I am inclined to think the interpretation contended for by the appellants' counsel the one which should be adopted; especially as against the defendants, who are mere sureties. But its meaning can hardly be regarded ·as so entirely clear and unequivocal as to exclude all aid from the circumstances surrounding the parties at the time of entering into the contract.  It is not usual to pay a very nice and critical regard to grammatical rules in the use of language·in the ordinary transactions of business; and no interpretation which depends upon a very rigid application of those rules can well be considered as so satisfactory as not to admit of modification by any species of extrinsic proof.

It was proper, therefore, upon the trial, to resort to evidence of the attending circumstances to assist in ascertaining the meaning and intention of the parties.  The proof adduced for that purpose, that at the time the note was left with the bank, neither Isaac S. Doane, nor Doane & Hoysradt were under any liabilities to the bank, was of the highest importance, and left no doubt as to the true construction of the terms of the memorandum.

Generally, when extrinsic proof is resorted to for the purpose of aiding in the interpretation of a written contract, the question is taken from the court and transferred to the jury.  This is so, however, only where there is some conflict of evidence, or at least some question of fact growing out of the extrinsic proof, which may admit of doubt.  In this case the parol evidence consisted of a single fact about which no doubt existed; and assuming this fact, the true meaning of the writing was clear.  No jury could properly disregard the evidence, or depart from the construction which is established.

But aside from this, the answer of the appellants is in direct conflict with the interpretation now sought to be put upon the memorandum in this respect.  That avers that the

note was made for the purpose of raising money; and that
the sum of $4,000 was actually borrowed upon the credit of
it. for which they, the appellants, were liable. In view of
the evidence and of this admission in the answer, there was
nothing for the jury to pass upon, so far as the past or
future character of the liabilities to be secured was con-
cerned; and the judge was clearly right in holding, as matter
of law, that the note was left as security for liabilities there-
after to be incurred.

This, however, does not dispose of the question whether
it was to be held as a continuing guaranty, or only as secu-
rity for a single sum of $4,000. This question is to be
determined upon the memorandum alone. There is no
extrinsic proof having any bearing upon it. I am not con-
sidering now whether the appellants are bound by the
agreement made by Doane, but simply what was the legal
effect of that agreement as made. According to the terms
used the note was left as security for "*all* liabilities
incurred," which, under the construction already adopted,
means liabilities to be incurred. There can be no doubt
that these words should be construed as creating a continuing
guaranty. The word "all" seems hardly consistent with
the idea that the parties contemplated the limited responsi-
bility now contended for. It is equivalent to the word
"any," which in a variety of cases has been held to create
a continuing guaranty. In the case of *Merle* v. *Wells* (2
*Campb.*, 413), the guarantor agreed "to be bound for *any*
debts" his brother might contract, not exceeding £100,
"for goods necessary in his business as a jeweler," and in
*Mason* v. *Pritchard* (2 *Campb.*, 436), the defendant became
responsible "for *any* goods" which the plaintiff might sup-
ply to his, the defendant's, brother, "to the amount of
£100." These were held to be continuing guaranties by
force of the word "any." So in the case of *Bartow* v. *Ben-
nett* (3 *Campb.*, 220), the guarantee was as follows: "I
hereby undertake to engage to be answerable to the extent

Agawam Bank *v.* Strever.

of £300 for *any* tallow or soap supplied by Mr. Bartow to France & Bennett, provided they shall neglect to pay in due time." In this case Lord ELLENBOROUGH said : "The defendant has become answerable for *any* soap or tallow supplied by the plaintiff to France &, Bennett. Without the word ' any,' it might, perhaps, have been confined to one dealing to the amount of £390 ; but as it is actually worded I am of opinion it remained in force while the parties continued to deal on the footing established when it was given." The decision in *Mayer* v. *Isaac* ( 6 *Mees. & Wels.*, 605 ), where the same word was used, is to the same effect. In these cases the courts followed the plain and natural import of the terms of the guaranty, and the present case cannot be distinguished from them.

This brings me to the question whether the defendant Doane had authority to deposit the note as a continuing guaranty. The evidence upon which this question is to be determined, independent of that stricken out, does not materially differ from that presented when the case was here upon a previous occasion. It consists mainly in proof of the possession of the note by Doane, and of its actual execution by the defendants. The position of the appellants' counsel is, that whether Doane had the requisite authority or not, was a question of fact to be determined by a jury, in view of the surrounding circumstances and the usage and practice of banks ; and that such was the judgment of this court upon the former hearing of the case.

But I do not so understand that decision. There the plaintiff had been nonsuited, and it was only necessary for the court to hold that there was sufficient evidence to warrant the submission of the case to the jury. Hence the reasoning of Judge HAND tends to that conclusion. But Judge JOHNSON, I think, goes further. After stating that there was no proof of the actual arrangement between the parties at the time of making the note, he says : "Upon this state of proof the presumption is, that Doane & Hoys

radt were authorized to make *any use* of the note for their own benefit, of which it was capable," citing *Seneca County Bank* v. *Neass* (3 *Comst.,* 442). This was said, of course, in reference to the use actually made of the note, and meant, I suppose, that authority so to use it might ·be legally inferred from the facts of the appellants having executed the note and left it in the hands of the other defendants, to be disposed of by them for their own benefit.

I see nothing in a case of this naked description, calling for the interposition of a jury. The facts are clear and undisputed. The general course of business in the community, including the universal practice of banks, is a matter of which courts may take judicial notice. The inferences called for, therefore, are not inferences of fact, founded upon proof which is equivocal, or which admits of various interpretations, but inferences of law; to be drawn from a given and recognized state of facts; as much so as if the same facts had been found by a special verdict. Where then, one signs a note as surety at the request of another, and intrusts it to the principal to be used for his benefit, what authority, in the eye of the law, is conferred upon the latter?

In the case of *Seneca County Bank* v. *Neass,* cited by Judge JOHNSON, this court held that where a note is indorsed for the accommodation of the maker, without restriction as to the purposes to which it is to be applied, the maker may appropriate it to any purpose beneficial to himself. In the present case there is no evidence of any restriction as to the use to be made of the note, unless it arises from the testimony of Henry Hoysradt, that when he procured the signatures of the appellants he told them that the note was intended to "raise money upon." How the money was to be raised, whether by a discount or a hypothecation of the note, he did not say; and as money might be raised as well in one way as the other, the remark has no bearing upon the point under consideration. For aught that appears,

therefore, the authority was as unrestricted in this case as in that of *Seneca County Bank* v. *Neass.*

The form of the note is like that in the case of *Commercial Bank* v. *French* (21 *Pick.*, 486), also cited by Judge JOHNSON, where MORTON, J., speaking of the note, says : " It is payable on demand, and bears interest from its date. It could not, therefore, have been the *expectation* of the parties that it was to be discounted, or that payment would be immediately demanded." In that case the note had been used as a collateral security.

But the question in these cases is not so much what authority was intended to be conferred, as what authority parties dealing with the person intrusted with the note have a right to assume to have been conferred. A security thus made is as capable of being used to raise money by hypothecation as by a direct sale or discount. It might therefore be a serious question whether one who voluntarily intrusts another with his name, to be used for the exclusive benefit of the latter, can object to any legal use made of it by the agent upon the ground of a private restriction upon his authority of which the party dealing with the agent has no notice.

It is, however, unnecessary to pass upon this question here, there being no proof that any restriction was in fact imposed. All that is necessary here to decide is, that a restriction, such as is contended for, does not arise as a legal inference from the form of the note, and the absence of any direct proof of authority to hypothecate. Upon this subject, I have no hesitation in holding, in accordance with what I understand to have been the views of Judge JOHNSON, at least, if not of the other judges, upon the previous hearing, that the legal presumption in such a case, in the absence of all evidence of any positive restriction, is, that the party intrusted with the note was authorized to use it in any legitimate way in which it could be made subservient to his purposes. The appellants are not perpetually bound by a pledge of the note as a continuing guaranty,

There is no doubt that in such a case the guarantor may terminate his responsibility at any time by giving notice to the other party that he will be holden no longer.

The only remaining question is, whether the judge erred in striking out the testimony of the appellants. I regard the evidence in question as both incompetent and immaterial. Incompetent, because the testimony of each of the witnesses related exclusively to the conversation between the witness himself personally and the principals on the note, and could have no tendency therefore to establish any understanding or agreement between his co-sureties and such principals. But if it could have that effect, and such agreement would be a defence for the other defendants, it must be equally so for the witness himself; and as the law stood when this case was tried, one defendant could not be permitted to testify to facts which, if true, would constitute a defence common to himself and his co-defendants. Such facts could not be taken into consideration as to the other defendants, and disregarded with respect to the party giving the testimony.

But the evidence stricken out was also immaterial. It did not prove, or tend to prove, any restriction upon the use of the note. Proving that the appellants did not in express terms authorize the use made of the note, does not repel or affect the legal inference to be drawn from their intrusting the note to the other defendants, without express directions as to the mode in which it should be used. There was, therefore, no error in striking out this testimony.

It follows that the judgment should be affirmed.

All the judges concurring,

Judgment affirmed.