ELIJAH H. GOODRICH, Appellant, *v.* HENRY H. STEVENS, Respondent.

(GENERAL TERM, THIRD DEPARTMENT, SEPTEMBER, 1871.)

Evidence of the circumstances under which the contract was made, of the relations of the parties and of the usage of the trade, is admissible to show the meaning of the words " his crop of flax," in a contract for the sale of flax between dealers in that article.

Accordingly *held* that the amount of the current year's production which the party contracting to deliver had on hand at the time of the making of the contract, by purchase as well as by production was, in view of extrinsic evidence intended by these words in such a contract.

The rule which excludes evidence, of extrinsic circumstances in explanation of the terms of a written contract discussed and explained per PARKER, J.

THE facts appear in the opinion.

*Townsend & Brown,* for the plaintiff.

*Beach & Smith,* for the defendant.

Present—MILLER, P. J., JAMES and PARKER, JJ.

PARKER, J.   On the 21st of August, 1866, one Henry P. Smith and the defendant entered into a written contract, in the words following: " Bought of H. P. Smith his crop of flax, 200,000 pounds, at 25 cents per pound, dressing to be equal to best of last year's work."

This suit is brought against the defendant for an alleged breach of the contract by him, in refusing to receive and pay for 200,000 pounds of flax, tendered him by Smith under the contract, Smith having assigned his cause of action for the breach to the plaintiff.

The 200,000 pounds of flax offered by Smith to the defendant was not all raised by Smith, but about half of it he had bought of other persons, and held the whole 200,000 pounds at the time of the making of the contract.

The defendant takes the ground that the contract requires the delivery by Smith of 200,000 pounds of flax raised by himself, and that he (the defendant) was not bound to receive any flax not so raised by him, and no smaller quantity than the whole 200,000 pounds.

To meet this construction of the contract, the plaintiff, upon the trial, offered to show the relations of the parties to it, and specific facts connected with the making of it; also, that Smith and defendant were both dealers in flax, and that, in the flax trade, the words "my crop," and "his crop," are used to signify the amount of the current year's production which the vendor has on hand at the time when the term is used, and are used in that sense by persons buying and selling flax. All this, and other offers of proof, were objected to and excluded, and plaintiff excepted.

The court held that the contract bound Smith to deliver to defendant 200,000 pounds of flax of his own raising; that it was clear and unambiguous in its terms, and not susceptible of change by proof of the negotiations which preceded it, nor by proof of custom; and that the plaintiff could not recover for any less amount and thereupon nonsuited the plaintiff, to all of which the plaintiff's counsel excepted.

Judgment upon the nonsuit was suspended, and the exceptions were ordered to be heard in the first instance at the General Term.

The question raised by the exceptions is, whether the meaning of the phrase, "his crop of flax," is so absolute and fixed that neither the relations of the parties and the circumstances attending its use by them, nor the customary meaning which it has in the trade, can be invoked to aid in its construction in this contract.

A crop is, primarily, some product of the soil gathered during a single year, and when a man speaks of " *his* crop,'

Goodrich *v.* Stevens.

he will ordinarily be understood to mean " a crop raised by himself." And yet the words do not, of themselves, import this meaning, but may be taken to mean a crop, that is, the portion of the present year's growth of the article in question, which had become his by purchase as well as by production. I do not think the words in question in the case at bar are so inflexible in meaning as to exclude proof of extrinsic circumstances to aid in their construction.

The rule under which the evidence of extrinsic circumstances was excluded, that parol evidence is inadmissible to contradict or vary the terms of a written contract, " it is to be remembered, is directed only against the admission of any other evidence of the *language* employed by the parties in making the contract than that furnished by the writing itself." (1 Greenl. Ev., 227.) " The writing is nevertheless to be read in the light of surrounding circumstances, in order more perfectly to understand the intent and meaning of the parties." (Id.) " The first question in all cases of contract is one of interpretation and intention. " What meaning did the parties intend to convey by the words they employed in the written instrument? To ascertain the meaning of these words, it is obvious that parol evidence of extraneous facts and circumstances may, in some cases, be admitted to a very great extent without in anywise infringing the spirit of the rule under consideration." (Id., § 282.) " The object is to discover the intention, and to do this the court may *put themselves in the place of the party,* and then see how the terms of the instrument affect the property or subject-matter." (Id., § 287.) The evidence offered in this case, or rather given and stricken out, under plaintiff's exception, will itself well illustrate the propriety of such extrinsic aid in the construction of contracts.

Under the evidence given and offered in this case, we may assume that Smith was known to the defendants as a buyer of flax, as well as a producer; that he had for several years been selling defendants quantities of flax, consisting of what he had himself bought and raised, and that in the contracts for

Goodrich *v.* Stevens.

such sales, the word "crop" had been used to denote what the vendor had, or owned of flax of that year's growth by purchase as well as by production. That shortly before this contract was made he had called on defendant and told him "he had a notion of buying some flax," and asked him what he would give him per pound that year, and on learning that defendant would give the same as he gave the year before, told him he would go home and pick up all the best lots. That two or three weeks after this he went to defendant and told him he had been home and bought all the small lots, and the best lots he could find. That he had about 200,000 pounds, and was ready to draw a contract; defendant thereupon said "we will go in and draw up a contract," and that the contract in question was then drawn. It seems to me that when the defendant says, in the contract drawn up, under these circumstances: "I have bought of H. P. Smith *his* crop of flax, 200,000 pounds," it is not necessary to understand him as meaning a crop of flax raised by him, 200,000 pounds, but that the words are liable under the circumstances shown at least to the other construction, "the crop which he has amounting to about 200,000 pounds," and that such latter meaning is, under the circumstances, the more obvious and reasonable one. In *Agawam Bank* v. *Strever* (18 N. Y. R., 502), the written memorandum of the contract was: "The above note is left as collateral security for all liabilities *incurred* by T. S. D., or D. & H. to the Agawam Bank;" and it was held that parol evidence was admissible for the purpose of arriving at the intent of the parties, in the hypothecation, as to whether liabilities already incurred or those to be incurred were intended.

SELDEN, J., after giving the language of the instrument, says: "Now it is true that upon a strict grammatical construction of those terms, they would be held to embrace only liabilities which had been already incurred. The word 'incurred,' being in the past tense when used without words to modify its meaning, would, in strictness, relate exclusively to past transactions. Were this memorandum, therefore, to

be construed by itself without the aid of any extrinsic fact or circumstance whatever, I am inclined to think the interpretation contended for by the appellant's counsel the one which should be adopted. But its meaning can hardly be regarded as so entirely clear and unequivocal as to exclude all aid from the circumstances surrounding the parties at the time of entering into the contract. \* \* \* It was proper, therefore, upon the trial to resort to evidence of the attending circumstances, to assist in ascertaining the meaning and intention of the parties."

Many instances of extrinsic evidence being held admissible, to explain language in a contract, the strict and primary meaning of which was clear and certain, are given in the cases cited upon the brief of the plaintiff's counsel. Within the principle of the rule laid down by Greenleaf and the case above cited, as well as those cited by plaintiff's counsel, I am very clear that the evidence offered and that stricken out, showing the relations of the parties, and the circumstances under which the contract was made, was admissible and should have been received and considered in the decision of the case.

I am also of the opinion that the evidence of *usage* and *custom* in relation to the meaning of the words "my crop" and "his crop," in the flax trade, was competent and should have been received.

"It is further to be observed," says Mr. Greenleaf, "that the rule under consideration which forbids the admission of parol evidence to contradict or vary a written contract is not infringed by any evidence of *known and established usage* respecting the subject to which the contract relates. To such usage, as well as to the *lex loci*, the parties may be supposed to refer, just as they are presumed to employ words in their usual and ordinary signification; and accordingly the rule is in both cases the same. Proof of usage is admitted either to interpret the meaning of the language of the contract, or to ascertain the nature and extent of the contract in the absence of express stipulations, and where the meaning is

equivocal and obscure." Several instances in point are enumerated by the author, one of which is where one of the subjects of a charter party was cotton in bales. (Id., § 292). Parol evidence of the mercantile use and meaning of this term was held admissible, citing *Taylor* v. *Briggs* (2 C. & P., 525).

So Mr. Justice STORY, in the case of the schooner Reside (2 Sumner, 567), in reference to the question, says: "It (usage or custom) may also be admitted to ascertain the true meaning of a particular word, or of particular words, in a given instrument, when the word or words have various senses—some common, some qualified, and some technical, according to the subject-matter to which they are applied."

And so it is said by Mr. Parsons: "Custom may control and vary the meaning of words, giving to such words as those of number a sense entirely different from that which they commonly bear, and which indeed by the rules of language and in ordinary cases would be expressed by another word." (2 Parsons on Cont., 537, 5th ed.) And again at page 542, same volume, he says: "Nor is it necessary that the word sought to be interpreted by custom should be of itself ambiguous, for not only will custom explain an ambiguity, but will change the sense of a word from one which it bears almost universally to another which is entirely different." In *Hinton* v. *Locke* (5 Hill, 437), Judge BRONSON says: "Usage can never be set up in contravention of the contract, but where there is nothing in the agreement to exclude the inference the parties are always presumed to contract in reference to the usage or custom which prevails in the particular trade or business to which the contract relates, and the usage is admissible for the purpose of ascertaining with greater certainty what was intended by the parties."

The same is held in *Wadsworth* v. *Allcott* (2 Seld., 64, 72). The offer of the plaintiff under consideration, as it was understood and ruled upon, was, I think, admissible for the purpose for which it was offered. In respect, then, to both classes of evidence excluded by the court, I think there was error in the

ruling, and that the exceptions thereto were well taken. There must be a new trial, with costs to abide the event.

JAMES, J., dissented.

New trial granted.