GILBERT B. BREWSTER, Respondent, *v.* WILLIAM R. BATES, Appellant, Impleaded, etc.

*Action to recover money loaned — a subsequent agreement, intended as a compromise, competent in evidence — joint debtors — Statute of Limitations suspended as to a joint debtor who has left the State.*

William R. Bates and Lemon D Coburn were co-partners engaged in the business of buying and selling oil. On July 24, 1866, they made, executed and delivered to Gilbert B Brewster an instrument of which the following is a copy:

" $2,541.36 Received of Gilbert Brewster twenty-five hundred and forty-one dollars and thirty-six cents, to operate with in buying and selling crude oil for him, and we are to pay said Brewster the principal and proceeds over and above the cost and trouble of buying and selling, use of tanks, &c

"ADDISON, *July* 24, 1866. (Signed) COBURN AND BATES."

The money referred to in said instrument as having been received from Brewster was commingled with the other moneys which Bates and Coburn were using in the oil business. They thereafter purchased a quantity of oil, paying about five dollars a barrel therefor, and subsequently were compelled to sell the same for less than a dollar per barrel.

The following February they paid Brewster the sum of $300.

In 1872, Bates, who had in the meantime removed to the State of Michigan, had a conversation with Coburn and Brewster, as a result of which he drew up an instrument of which the following is a copy:

"ADDISON, STEUBEN Co., N. Y., *March* 4, 1872.

"I, Lemon D. Coburn, of Addison, Steuben co., N. Y., hereby agree to pay Gilbert B. Brewster, of the same place, the sum of $1,500 for value received. It is understood between the parties in interest that this amount when paid is to reimburse said Gilbert B. Brewster in full for the sum of $2,541 advanced to Coburn and Bates. It is also understood that said sum is to be paid in land in Michigan, to be located in the name of said Brewster by Wm. R. Bates, of East Saginaw, Michigan. Said land to be accepted from time to time as located, and amount of value of each piece of land so accepted from time to time to be indorsed upon this agreement in satisfaction thereof. It is understood and agreed that the obligation for $2,541, signed by Coburn and Bates, shall hold good until this agreement is accomplished, or that if a portion of this agreement is accomplished, or, in other words, if this agreement is partially accomplished, said obligation shall hold good proportionally to the amount paid as above. It is further agreed that this agreement shall be carried out within two years from the date of this paper."

Such instrument was executed by Brewster and Coburn and delivered to Brewster   Bates was asked to sign the paper, but declined to do so, for the reason that he was employed in the government land office in Michigan and did not want it to be known that he had located government land in his own name. No land was, in fact, located and transferred to Brewster under this agreement and nothing was paid thereon.

*Held,* that the transaction was, in effect, a loan by Brewster to Coburn & Bates of the sum of $2,541.36, whose return for the loan was to be the profits from the oil business;

That the second agreement was intended as a compromise of the claim due to Brewster from Bates and Coburn, and that Bates, by assenting to the same, recognized his liability to Brewster for the principal loaned as still continuing;

That such second agreement was properly received in evidence, upon the trial of an action brought by Brewster against Bates and Coburn, as it tended to show how the defendants understood and construed the first agreement entered into by them

The absence of one joint debtor from the State suspends the running of the Statute of Limitations against him although his co-debtor has remained within the State, and each joint debtor, in respect to the defense of the Statute of Limitations, stands upon the facts of his own case.

It does not follow, that because one of two or more joint debtors cannot interpose the Statute of Limitations as a defense to an action, the other may not, and section 457 of the Code of Civil Procedure has not changed the rule in such respect.

APPEAL by the defendant, William R. Bates, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of

the clerk of the county of Steuben on the 19th day of April, 1893, upon the verdict of a jury rendered by direction of the court after a trial at the Steuben Circuit.

*D. M. Darrin,* for the appellant.

*Horace D. Baldwin,* for the respondent.

HAIGHT, J.:

The appellant and one Lemon D. Coburn were co-partners engaged in the business of buying and selling crude oil. On the 24th day of July, 1866, they made and executed the following instrument and delivered the same to the plaintiff:

" $2,541.36. Received of Gilbert Brewster twenty-five hundred and forty-one dollars and thirty-six cents, to operate with in buying and selling crude oil for him, and we are to pay said Brewster the principal and proceeds over and above the cost and trouble of buying and selling, use of tanks, &c.

" ADDISON, *July* 24, 1866.

" (Signed)    COBURN AND BATES."

It appears from the evidence that the money received from the plaintiff was commingled with other moneys which the defendants were using in the oil business, amounting to the sum of between $7,000 and $8,000; that shortly thereafter the defendants purchased a quantity of oil in tank, paying about five dollars per barrel therefor; that subsequently the oil decreased in value, and they were compelled to sell it for less than a dollar per barrel. That thereafter, and in February, they paid the plaintiff the sum of $300.

It further appears that the defendant Bates about that time removed to the State of Michigan, where he has since resided; that in 1872 he visited this State and had a conversation with his former co-partner, Coburn, and the plaintiff; that he thereupon drew the following paper, which was executed by Coburn and the plaintiff, and delivered the same to the plaintiff.

" ADDISON, STEUBEN Co., N. Y., *March* 4, 1872.

" I, Lemon D. Coburn, of Addison, Steuben co., N. Y., hereby agree to pay Gilbert B. Brewster, of the same place, the sum of $1,500 for value received. It is understood between the parties

in interest that this amount when paid is to reimburse said Gilbert B. Brewster in full for the sum of $2,541 advanced to Coburn and Bates. It is also understood that said sum is to be paid in land in Michigan, to be located in the name of said Brewster by Wm. R. Bates, of East Saginaw, Michigan. Said land to be accepted from time to time as located, and amount of value of each piece of land so accepted from time to time to be indorsed upon this agreement in satisfaction thereof. It is understood and agreed that the obligation for $2,541, signed by Coburn and Bates, shall hold good until this agreement is accomplished, or that if a portion of this agreement is accomplished, or, in other words, if this agreement is partially accomplished, said obligation shall hold good proportionally to the amount paid as above. It is further agreed that this agreement shall be carried out within two years from the date of this paper."

It further appears that Bates was asked to sign this paper, but declined to do so for the reason that he was employed in the government land office in Michigan, and did not want it to be known that he had located government land in his own name. No land was located and transferred to the plaintiff under this agreement, and nothing has been paid thereon.

We think the transaction described was in effect a loan by the plaintiff to the defendants Coburn & Bates of the sum of $2,541.36. It is true they received it "to operate with in buying and selling crude oil for him," but they agreed to repay to him the principal, and any proceeds over and above the cost and trouble of buying and selling. His use, therefore, for the loan of the money was to be the profits from the business, and to this extent he became interested, and his right to recover the use for his money depended upon the success of the investment; but as to the principal, the agreement was to repay to him, and this promise was not made dependent upon their success in the speculation.

It appears that the defendants so understood and treated the contract, for they commingled the money received from the plaintiff with that received from other sources, and when they purchased oil they purchased it in their own names, and never reported that any particular quantity had been purchased on the account of the plain-

tiff. And again, in 1872, when the second agreement was executed, it was expressly stipulated that their obligation for the $2,541 loaned to them should hold good until their agreement to pay $1,500 in lands to be located in Michigan should be accomplished, thus recognizing their liability for the principal. It is true that this agreement was not signed by the defendant Bates, but he drew it, and, therefore, knew of its contents. It was intended as a compromise of the claim that they owed the plaintiff. He himself was to make the payments by the locating of the lands which the plaintiff was to accept in satisfaction of the $1,500 which had then been agreed upon as the amount that should be paid. We must, therefore, consider him as assenting to the arrangement there entered into, and as then recognizing his liability to the plaintiff for the principal loaned as still continuing.

We think this agreement was properly received in evidence. It tends to show how the defendants understood and construed the first agreement entered into by them. The right of the plaintiff to recover depends upon the first agreement. The second was but an attempt to compromise. The fact that the plaintiff consented that a verdict might be directed for the sum mentioned in the second contract does the defendants no harm, for it is less than the sum that the plaintiff would have been entitled to under the first contract.

Upon the trial the complaint was dismissed as to the defendant Coburn, upon the ground that the Statute of Limitations had run so far as the claim against him was concerned. It is now contended that the Statute of Limitations had also run as to the defendant Bates because the defendants were jointly liable for plaintiff's claim. The question is thus presented as to whether in case of parties jointly liable, the Statute of Limitations will run against the claim where one remains in the State and the other has removed from and continues to reside out of the State.

In the case of *Brown* v. *Delafield* (1 Den. 445) it was held that in assumpsit against several defendants, it was no answer to a plea of the Statute of Limitations that one of them within six years from the accruing of the cause of action departed from the State and continued absent until the commencement of the suit. That all the persons liable upon a joint contract must depart from the State in order to arrest the running of the statute against the demand. But.

in *Denny* v. *Smith* (18 N. Y. 567) this doctrine was overruled, and it was held that the absence of one joint debtor from the State suspends the running of the statute against him although his co-debtor has remained within the State. And in *Merritt* v. *Scott* (3 Hun, 657–659) DAVIS, P. J., in delivering the opinion of the court, says : " After much judicial conflict, it is the settled law of this State as to joint debtors, that in respect of the defense of the Statute of Limitations each stands upon his own bottom, and it, therefore, does not follow that because one of such debtors cannot interpose the statute as a defense, the others may not."

It is claimed, however, that section 457 of the Code of Civil Procedure has changed the practice, and that the rule declared in *Brown* v. *Delafield* should be again adopted, but we do not so understand its provisions. The three preceding sections pertain to actions against two or more persons severally liable upon a written instrument. The section then provides : " The last three sections do not affect a defense or other objection to a defendant growing out of the failure to join in the action two or more persons jointly liable ; and, as regards the other parties to the action, persons jointly liable are regarded as one party for every purpose contemplated by those sections." The revisers appear to have regarded this section as superfluous, but, in view of the express repeal of the Laws of 1832, chapter 276, and subsequent amendatory acts, by chapter 417, Laws of 1877, by which the plaintiff was allowed to sue in one action the various parties to a bill of exchange or promissory note, deemed it best to insert it. (See revisers' note.) It is thus obvious that it was not inserted for the purpose of effecting the change contended for by the appellant.

The judgment appealed from should be affirmed.

DWIGHT, P. J., LEWIS and BRADLEY, JJ., concurred.

Judgment appealed from, affirmed.