JEFFERSON H. BEEMER, Respondent, *v.* WARREN PACKARD and Others, Appellants, Impleaded with WILLIAM M. HUNTER.

*Promise to pay a party or to pay on its obligations a certain sum — parol evidence of the statements and situations of the parties when a writing was made is competent to explain it — privity between the promisee and a third person, its creditor.*

In an action brought to recover upon a promise made to the Randolph Lumber Company by the defendants for the benefit, as alleged, of the plaintiff, it appeared that the defendants had indorsed for the Randolph Lumber Company, and for that reason had claims against it amounting to $27,000; that the defendants wished

to gain possession of the property of the Randolph Lumber Company, consisting of mills and timber land; that at this time the Randolph Lumber Company was indebted to other parties, including the plaintiff, in the sum of $3,000; that the defendants agreed in writing to buy the property of the Randolph Lumber Company, and to pay $30,000 for it "in cash or obligations owing by said Randolph Lumber Company." It further appeared that the representative of the Randolph Lumber Company had insisted that the indebtedness of $3,000, of which the plaintiff's claim was a part, should be paid, and there was evidence tending to show that the defendants had verbally agreed to pay it, and that, in reliance upon this promise, the representative of the Randolph Lumber Company had signed the written agreement.

The referee, before whom the case was tried, admitted parol evidence upon the part of the plaintiff, tending to show that the expression "obligations owing by said Randolph Lumber Company," one of the means by which the vendees were permitted to make payment, was intended to cover the debt due the plaintiff, and that the agreement was that that debt should be paid by the defendants.

*Held,* that the evidence was admissible;

That, as the expression was vague, surrounding circumstances might be proved by parol, in order to show what particular obligations of the Randolph Lumber Company, if any, were mentioned by the parties, and were agreed to be paid;

That the evidence did not tend to vary or contradict the written contract, but was admitted for the purpose of removing an ambiguity;

That the agreement was not a contract of indemnity to the Randolph Lumber Company, but a promise to pay the debts of the Randolph Lumber Company, and that as the promisee was then indebted to the plaintiff, and the promise was made for the benefit of the plaintiff, he could recover upon it against the promisors.

APPEAL by the defendants, Warren Packard and others, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Cattaraugus on the 29th day of January, 1895, upon the report of a referee.

The complaint in this action alleged that at the time in the complaint mentioned the Randolph Lumber Company was a copartnership composed of the defendant William M. Hunter and Mary A. Hunter, and until the 17th day of December, 1891, were engaged in the business of lumbering at and near Watsonville, Pa., and that the defendants are co-partners doing business at Watsonville under the firm name of Wood Brothers & Co.

That on or about the 7th day of April, 1890, the plaintiff made and entered into an agreement with the Randolph Lumber Company, whereby the plaintiff agreed to sell to said company certain machinery at the agreed price of $300, which machinery the Ran-

dolph Lumber Company so contracted to purchase for the purpose of, and the same was used by said company in, erecting and equipping its steam mill near Watsonville, for the purpose of manufacturing lumber, etc., and was a part of the property transferred and delivered to the defendants about December 17, 1891; that it was expressly agreed by and between the plaintiff and the said Randolph Lumber Company that the absolute legal title and right to the possession of all said machinery and property should be and remain in the plaintiff until the said purchase price of $300 was fully paid, which was to be paid at the expiration of three months from said April 7, 1890, and that no part thereof has been paid.

The complaint further alleged that prior to November 13, 1891, the Randolph Lumber Company was indebted to one George Hubbard for various articles of personal property sold and delivered to said company, for the purpose of being used, and which was used, by the Randolph Lumber Company in its business; that on that day the said company made, executed and delivered to the said George Hubbard its promissory note for the sum of $104.55, the consideration for such note being the property sold and delivered by said Hubbard to the Randolph Lumber Company; that when such note became due and payable it was presented for payment, which was refused; that before the commencement of this action the said George Hubbard, for a valuable consideration, assigned said note to the plaintiff.

The complaint further alleged that on or about the 17th day of December, 1891, the said Randolph Lumber Company sold, assigned and transferred to the defendants all the property and effects belonging to the said Randolph Lumber Company used in connection with and belonging to its business of lumbering; that as a consideration or purchase price for the said property and business so sold, transferred and delivered by the said Randolph Lumber Company to the defendants, the defendants on their part promised and agreed to pay off and discharge all of the indebtedness then owing by the Randolph Lumber Company, which was created in or incurred for or in connection with, and in establishing and carrying on the said business of the Randolph Lumber Company as fast as such indebtedness became due; and to pay off and discharge as part purchase price thereof the aforesaid indebtedness so owing by the Randolph

Lumber Company to the plaintiff and said George Hubbard; that all of the indebtedness mentioned as owned and held by the plaintiff was incurred by the said Randolph Lumber Company in establishing, carrying on and operating its said business of lumbering, and is a part of the indebtedness which the defendants undertook and agreed to so pay off and discharge.

The answer of the defendants denied that they promised and agreed to pay off and discharge all of the indebtedness then owing by the Randolph Lumber Company which was created or incurred for or in connection with, and in establishing and carrying on the said business of the Randolph Lumber Company as fast as such indebtedness became due; and to pay off and discharge as part purchase price thereof the aforesaid indebtedness so owing by the Randolph Lumber Company to the plaintiff and said George Hubbard. And they denied that the indebtedness in the complaint mentioned was a part of the indebtedness which they undertook and agreed to pay off and discharge.

The answer further alleged that, on or about the 17th day of December, 1891, at Watsonville, the defendants, composing the firm of Wood Brothers & Co., purchased divers properties consisting of lands, saw and shingle mills, etc., and all the assets and properties of the Randolph Lumber Company and the defendant William M. Hunter, for and in consideration of the agreement on the part of the said Wood Brothers & Co. to pay therefor the sum of $30,000 in cash or obligations owing by the said Randolph Lumber Company in connection with the property and business theretofore done at Watsonville. That thereafter the said purchasers did pay and cause to be paid the said sum of $30,000, except an amount specifically assumed which was a lien upon the land, and which was not due at the time of the commencement of this action.

The agreement of December 17, 1891, between the Randolph Lumber Company and William M. Hunter, of the first part, and Warren Packard, J. W. Spangenburg, George W. Wood and Charles L. Wood, as parties of the second part, contained the following provision in regard to the consideration for the purchase.

" Said second party accepts above property and credits and the assets, and agrees to pay therefor the sum of thirty thousand dollars, in the manner following, to wit: In cash or obligations owing

by said Randolph Lumber Company in connection with the property and business heretofore done at this point, or that may be done thereafter."

*James G. Johnson,* for the appellants.

*Henderson & Wentworth,* for the respondent.

Present — LEWIS, BRADLEY, WARD and ADAMS, JJ.

Judgment affirmed on opinion of referee, with costs.

The opinion of the referee was as follows :

CLARENCE A. FARNUM, Referee :

The defendants urged upon the trial of the issues herein that they promised to pay to the Randolph Lumber Company, for the transfer of the properties to them December 17, 1891, $30,000 in cash or $30,000 in the obligations owing by the Randolph Lumber Company, and that there is no privity between this plaintiff and the defendants, and that the action cannot be maintained ; that their promise was to the Randolph Lumber Company and not for the benefit of this plaintiff or any other person.

Against the defendants' objection evidence was given showing the situation and surroundings of the parties at the time the written agreement was made. This evidence was received, not for the purpose of changing or modifying the written agreement made by the parties, but to place the court, so far as possible, in the situation of the parties when they entered into the agreement that it might determine what the parties sought to do. It is impossible to say from an inspection of the writing that the promise to pay " in cash or obligations owing by said Randolph Lumber Company " is so definite or certain, or the meaning is so certain, that one thing only can be meant.

The defendants urge that they have the option to pay in cash or obligations of the Randolph Lumber Company. If so, they have not exercised that part of it nor attempted to exercise that part by paying in cash, for they have not paid the Randolph Lumber Company a dollar in cash. Then, if the defendants are to or may satisfy their part of the agreement by paying the obligations of the Randolph Lumber Company, it does not appear so definitely by the writing but that evidence of the surrounding circumstances may be given

to show what particular obligations, if any, were mentioned and would satisfy their agreement.

It appears that at the time this writing was made the Warren Packard Company, and G. W. Wood's Sons had indorsed largely for the Randolph Lumber Company, and then had claims against the company of $27,000 on account of such indorsements, including the amount unpaid on an executory contract for the purchase of timber land, and that the indorsers had an assignment of the land contract for the purchase of the timber lands, upon which the mills were erected, but the possession of the property was in the Randolph Lumber Company. For some reason the indorsers desired to have the possession of this property, and in order to get it they agreed to pay $30,000, $27,000 of which, including the amount unpaid on the land contract was in obligations of the Randolph Lumber Company, upon which they were liable as indorsers. William M. Hunter, representing the Randolph Lumber Company, knew he was parting with the possession of all the available assets of his company, and urged he could not do this unless $3,000 of obligations of his company, held at Randolph, N. Y., incurred for materials which went into this plant, should be paid by the defendants. The defendants agreed to pay these obligations, amounting to $3,000, of which plaintiff's claim is a part, if he would make such a transfer of possession, and relying upon it he consented to pass the possession of his property to the defendants, and the writing was then signed by him and the other defendants.

The evidence admitted does not tend to establish any fact changing the contract entered into, nor to enlarge the liability of the defendants. It was offered for the purpose of showing that of such obligations $3,000 of them were held by Randolph parties, and must be paid by the defendants. The defendants contend that they have paid $30,000 of obligations of the Randolph Lumber Company, and should be relieved from further payment. Their agreement was that of this sum $3,000 of it should be paid to the Randolph parties and they have failed to carry out that part of their agreement. It can make no difference how large an amount of the general obligations of the Randolph Lumber Company has been paid if the ones they expressly agreed to pay still remain unpaid.

I think parol evidence of the situation of the parties at the time this writing was made was competent.

In *Agawam Bank* v. *Strever* (18 N. Y. 502) the note sued upon was left with the bank as collateral security "for all liabilities incurred," etc., and the court in speaking of this writing said: "The language of that memorandum is as follows: 'The above note is left as collateral security for all liabilities *incurred* by Isaac S. Doane or Doane & Hoysradt to the Agawam bank.' Now it is true that upon a strict grammatical construction of these terms, they would be held to embrace only liabilities which had been already incurred. The word 'incurred' being in the past tense, when used without other words to modify its meaning, would in strictness relate exclusively to past transactions. Were this memorandum, therefore, to be construed by itself, without the aid of any extrinsic fact or circumstance whatever, I am inclined to think the interpretation contended for by the appellants' counsel the one which should be adopted. * * * But its meaning can hardly be regarded as so entirely clear and unequivocal as to exclude all aid from the circumstances surrounding the parties at the time of entering into the contract. * * * It was proper, therefore, upon the trial, to resort to evidence of the attending circumstances to assist in ascertaining the meaning and intention of the parties."

In *Thorington* v. *Smith* (8 Wall. 1) it was held that where a contract was made during the late rebellion in one of the insurgent States and provided for the payment of $45,000 the defendant was permitted to show that it was meant that this sum should be paid in Confederate notes. Chief Justice CHASE, in writing the opinion of the court, said: "Such evidence does not modify or alter the contract. It simply explains an ambiguity, which, under the general rules of evidence, may be removed by parol evidence."

So in *Manchester Paper Company* v. *Moore* (104 N. Y. 680) it was held that where goods were delivered under an agreement by which the buyer agreed to pay the "ruling market rates," and it appeared there were two market rates, one for goods of the kind bought of importers and another for them as sold by jobbers, evidence of conversations of the parties and the surrounding circumstances for the purpose of showing which of the two was intended was competent.

In *Goodrich* v. *Stevens* (5 Lans. 230) the defendant, by an instrument in writing, "bought of H. P. Smith his crop of flax, 200,000

pounds." The trial court held that the contract bound Smith to deliver to the defendant 200,000 pounds of flax of his own raising; that the contract was clear and unambiguous in its terms, and not susceptible of change by proof of the negotiations which preceded it, and that the plaintiff could not recover for any less amount, and nonsuited the plaintiff, and the court, upon appeal, held that the words in question would not bear so inflexible a meaning as to exclude proof of extrinsic circumstances to aid in their construction, and reversed the ruling below.

A like view was taken in a similar question determined in *Walrath* v. *Thompson* (4 Hill, 200).

Other cases might be cited illustrating the rule, but the doctrine laid down in them is elementary and finds approval in 1 Greenl. on Ev. (§§ 288, 288a); Taylor on Ev. (§§ 1194, 1198); Reynolds Stephens' Ev. (Art. 91); Browne on Parol Ev. (§ 53, pp. 179–190; Id. § 54, pp. 190–195).

Numerous decisions have been cited by counsel for the defendants as authorities for the proposition that the promise made by the defendants, if any, would not permit the plaintiff to maintain an action upon it. It is often difficult to determine whether a promise is made for the benefit of a third person, and our decisions are not all in harmony. In this case the question turns upon a construction of the agreement, whether it was a contract of indemnity to the Randolph Lumber Company or an agreement to pay the Randolph liabilities of the Randolph Lumber Company. If the former, of course, the action cannot be sustained; if the latter, it may.

If parol evidence be competent to establish the promise, or rather to aid the court in determining from the writing and surrounding circumstances, if one was made, and I have held it is, then the promise was for the benefit of the parties holding this class of obligations. A long line of cases running from *Schemerhorn* v. *Vanderheyden* (1 Johns. 139) to *Townsend* v. *Rackham* (143 N. Y. 516) illustrate the doctrine that where a promise is made by one person to another, for the benefit of a third person, *and the promisee is obligated to such third person,* an action may be maintained by such third person upon the promise.

I must hold that the plaintiff is entitled to recover against the defendants the amount claimed in the complaint.