Bologna v Carmel Richmond Nursing Home, Inc. (2024 NY Slip Op 50477(U))

[*1]

Bologna v Carmel Richmond Nursing Home, Inc.

2024 NY Slip Op 50477(U)

Decided on April 25, 2024

Supreme Court, Kings County

Maslow, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on April 25, 2024
Supreme Court, Kings County

Josephine Bologna, as Proposed Administrator 
 of the Estate of ANNA BOLOGNA, Plaintiff,

against
Carmel Richmond Nursing Home, Inc. d/b/a CARMEL RICHMOND HEALTHCARE AND REHABILITATION CENTER, Defendant.

Index No. 531887/2022

Alonso Krangle LLP, Melville (Andres F. Alonso of counsel), for plaintiff
Barker Patterson Nichols, LLP, Garden City (Brian M. Andrews of counsel), for defendant

Aaron D. Maslow, J.

The following numbered papers were used on this motion:
Submitted by Defendant:
NYSCEF Doc No. 59: Notice of Motion
NYSCEF Doc No. 60: Affirmation of Brian M. Andrews, Esq. in Support of Motion
NYSCEF Doc No. 61: Affidavit of Mary Beth Francis, RN, MS, LHN
NYSCEF Doc No. 62: Affirmation of John Lazzara, D.O.
NYSCEF Doc No. 63: Summons and Complaint
NYSCEF Doc No. 64: Carmel Richmond Nursing Home, Inc. Medical Records Part 1 of 2
NYSCEF Doc No. 65: Carmel Richmond Nursing Home, Inc. Medical Records Part 2 of 2
NYSCEF Doc No. 66: Memorandum of Law in Support of Defendant's Motion to Dismiss
NYSCEF Doc No. 67: Carmel Richmond Nursing Home, Inc. COVID-19 Protocols
NYSCEF Doc No. 68: CMS Guidance for Infection Control and Prevention of Coronavirus
NYSCEF Doc No. 69: New York State Department of Health Advisory
NYSCEF Doc No. 70: World Health Organization Advisory: Rational Use of PPE
NYSCEF Doc No. 71: New York State Department of Health Advisory: Short Supply of PPE
NYSCEF Doc No. 72: Centers for Disease Control Advisory: Testing for COVID-19
NYSCEF Doc No. 73: FDA Emergency Use Authorization: Hydroxychloroquine
NYSCEF Doc No. 74: COVID-19 Litigation Against Nursing Homes Order of CoordinationNYSCEF Doc No. 75: Hampton v City of New York, et al.
NYSCEF Doc No. 76: Saltanovich v Sea View Hospital Rehabilitation Center
NYSCEF Doc No. 77: Damon v Clove Lakes Healthcare and Rehabilitation Center, Inc.
NYSCEF Doc No. 78: Garcia v New York City Health and Hospitals Corporation
NYSCEF Doc No. 79: Shankle v The Heights of Summerlin, LLC
NYSCEF Doc No. 80: Hyman v Richmond University Medical Center
NYSCEF Doc No. 81: Seror v Clearview Operating Co., LLC
NYSCEF Doc No. 82: DeFonce v Sky View Rehabilitation and Health Care Center
NYSCEF Doc No. 83: Fortes v Sky View Rehabilitation and Health Care Center
NYSCEF Doc No. 84: Robertson v Humboldt House Rehabilitation and Nursing Center
NYSCEF Doc No. 85: Hohler v Garden Gate Health Care Facility
NYSCEF Doc No. 86: Crampton v Garnet Health
NYSCEF Doc No. 87: Mitchell v Jewish Home Lifecare Sarah Neuman Center
NYSCEF Doc No. 88: Colon v Niagara Rehabilitation and Nursing Center
NYSCEF Doc No. 89: Spitzer v Sky View Rehabilitation and Health Care Center, LLC
NYSCEF Doc No. 90: Lee v Sapphire Center for Rehabilitation and Nursing of Central Queens
NYSCEF Doc No. 91: Hassan v Terrace Acquisions II, LLC
NYSCEF Doc No. 92: Valukis v Kapssalis-Rambalakos, M.D., et al.
NYSCEF Doc No. 93: Sapienza v Tromba, et al.
NYSCEF Doc No. 94: Thomas v White d/b/a White Oaks Rehabilitation and Nursing Center
NYSCEF Doc No. 95: Bushart v The Brightonian, Inc.
NYSCEF Doc No. 96: Schapers v West Lawrence Care Center, LLC
NYSCEF Doc No. 97: Becker v Carmel Richmond Nursing Home, Inc.
NYSCEF Doc No. 98: Burke v Sapphire Center for Rehabilitation & Nursing of Central Queens
NYSCEF Doc No. 99: Gaviria v Sapphire Center for Rehabilitation & Nursing
NYSCEF Doc No. 100: Ho v Sapphire Center for Rehabilitation & Nursing of Central Queens
NYSCEF Doc No. 101: Machin v Sapphire Center for Rehabilitation & Nursing
NYSCEF Doc No. 102: Gibbs v Atlantis Operating LLC
NYSCEF Doc No. 103: McCaffery v White Plains Hospital Medical Center, et al.
NYSCEF Doc No. 104: Lociero v Park Avenue Operating, LLC
NYSCEF Doc No. 105: Mera v New York City Health and Hospitals Corporation
NYSCEF Doc No. 106: Loggia v Carmel Richmond Nursing Home, Inc.
NYSCEF Doc No. 107: Caropreso v Carmel Richmond Nursing Home, Inc.
NYSCEF Doc No. 108: Roland v Parker Jewish Institute for Health Care and Rehabilitation
NYSCEF Doc No. 109: Hepworth v Our Lady of Consultation Nursing and Rehabilitation Care
NYSCEF Doc No. 110: Whitehead v Pine Haven Opinion entered on November 30, 2023
NYSCEF Doc No. 111: Complaint in Whitehead v Pine Haven Operating LLC
NYSCEF Doc No. 112: Bonavita v Parker Rehabilitation Institute for Health Care
NYSCEF Doc No. 113: Martinez v New York City Health and Hospitals Corporation
NYSCEF Doc No. 114: Memorandum of Law in Support of Defendant's Motion to Dismiss
NYSCEF Doc No. 115: Affidavit of Service dated February 8, 2024
Submitted by Plaintiff:
NYSCEF Doc No. 116: Affirmation of Andres F. Alonso, Esq. in Opposition to Motion
NYSCEF Doc No. 117: Memorandum of Law in Opposition to Defendant's Motion to Dismiss
NYSCEF Doc No. 118: Summons and Complaint
NYSCEF Doc No. 119: Notice of Removal
NYSCEF Doc No. 120: World Health Organization Situation Report No. 1
NYSCEF Doc No. 121: World Health Organization Situation Report No. 3
NYSCEF Doc No. 122: New York State Department of Health Report No. 2020-S-55
NYSCEF Doc No. 123: News Article dated February 13, 2020 Concerning the Coronavirus
NYSCEF Doc No. 124: News Article dated February 29, 2020 Concerning COVID-19
NYSCEF Doc No. 125: Centers for Disease Control Interim Guidance Concerning COVID-19
NYSCEF Doc No. 126: CMS Guidance Concerning Coronavirus dated March 4, 2020
NYSCEF Doc No. 127: New York State Department of Health March 6, 2020 Guidance
NYSCEF Doc No. 128: New York State Department of Health March 11, 2020 Guidance
NYSCEF Doc No. 129: New York State Department of Health March 13, 2020 Health Advisory
NYSCEF Doc No. 130: CMS Guidance Concerning Coronavirus dated March 13, 2020
NYSCEF Doc No. 131: CMS Guidance Concerning Coronavirus dated April 19, 2020
NYSCEF Doc No. 132: NYS Office of the Attorney General January 30, 2021 Report
NYSCEF Doc No. 133: Intentionally Omitted
NYSCEF Doc No. 134: New York State Constitution
NYSCEF Doc No. 135: New York State Senate Bill S5177
NYSCEF Doc No. 136: New York State Constitution
NYSCEF Doc No. 137: New York State Senate Bill S5177
NYSCEF Doc No. 138: Affidavit of New York State Assemblymember Ronald T. Kim
NYSCEF Doc No. 139: Cacace v Grandell Rehabilitation and Nursing Center, Inc.
NYSCEF Doc No. 140: Whitehead v Pine Haven Operating LLC
NYSCEF Doc No. 141: Lara v S&J Operational, LLC
NYSCEF Doc No. 142: Gonnelly v Newburgh Operations, LLC
NYSCEF Doc No. 143: Matos v Chiong
NYSCEF Doc No. 144: Robertson v Humboldt House Rehabilitation & Nursing Center
NYSCEF Doc No. 145: Costiera v MMR Care Corp.
NYSCEF Doc No. 146: Espinal v Jackson Heights Care Center, LLC
NYSCEF Doc No. 147: Affidavit of Service, dated March 28, 2024
NYSCEF Doc No. 148: Letter dated April 1, 2024 from Andres F. Alonso, Esq.
Submitted by Defendant:
NYSCEF Doc No. 149: Reply Affirmation of Brian M. Andrews, Esq. in Further Support of Motion
NYSCEF Doc No. 150: Reply Memorandum of Law in Further Support of Motion to Dismiss
NYSCEF Doc No. 151: Reply Memorandum of Law in Further Support of Motion to Dismiss
NYSCEF Doc No. 152: Hasan v Terrace Acquisitions II, LLC
NYSCEF Doc No. 153: Cameron v Cobble Hill Health Center, Inc.
NYSCEF Doc No. 154: Filippone v White Oaks Rehabilitation and Nursing Center
NYSCEF Doc No. 155: Affidavit of Service, dated April 9, 2024
Upon the foregoing papers and having heard oral argument on the record from appearing counsel, the within motion is determined as follows.
Preamble
The present COVID-19-related nursing home tort action features issues of cardinal import, which our state's trial courts have alas continually been called upon to wrestle with in the wake of the COVID-19 pandemic that befell our nation starting in February 2020. Amidst the nationwide malaise engendered by the COVID-19 pandemic, the New York State Legislature, on March 7, 2020, enacted Public Health Law Article 30-D, commonly referred to as the Emergency or Disaster Treatment Protection Act ("EDTPA"), which drastically curtailed the liability exposure of health care facilities and personnel for damages alleged to have been sustained in the course of providing health care services in connection with COVID-19. 
Faced with a deluge of media reports and public outcry stemming from a colossally elevated number of nursing home patients who died from COVID-19, coupled with a January 30, 2021 report titled "Nursing Home Response to COVID-19 Pandemic" issued by the New York State Office of the Attorney General highlighting a lack of compliance with infection control protocols prevalent in the nursing home context, the Legislature made an abrupt volte-face, via Senate Bill S5177, repealing Public Health Law Article 30-D, effective April 6, 2021 (see NYSCEF Doc No. 135, New York Senate Bill S5177).
Since shortly after the repeal of the EDTPA, trial courts have been constrained to grapple with the vexing issue as to whether the repeal of the EDTPA is to be applied retroactively. Predictably, given the statutory silence on the retroactivity front, trial courts have issued discordant decisions as to the core retroactivity conundrum when faced with tort suits filed by the estates of nursing home COVID-19 decedents.
As shall appear below, while appellate courts have recently issued decisions that are largely in harmony in this context, COVID-19-related nursing home suits, and the ever-recurring attendant EDTPA defense, shall remain but a nascent area of the law until our State's highest Court provides definitive guidance to the bench and bar in this arena. Having percolated through the trial and intermediate court crucible, this emerging area of the law is ripe for Court of Appeals review. Of particular import would be categorical guidance as to the propriety of a retroactive application of the repeal of the EDTPA, along with an analysis of the concomitant constitutional due process implications, as well as a delineation of the contours of the gross negligence statutory carveout to EDTPA immunity.
Our State's tumultuous odyssey through the EDTPA regime, and its subsequent repeal, may serve as a cautionary tale of sorts. Hasty, albeit well-intentioned, legislative enactments in the midst of calamitous circumstances oft-times beget unanticipated inauspicious consequences.

 Nature of the Action
In this COVID-related nursing home tort action, Plaintiff Josephine Bologna, as Administrator of the Estate of Anna Bologna ("Plaintiff") filed suit against Defendant Carmel Richmond Nursing Home, Inc. d/b/a Carmel Richmond Healthcare and Rehabilitation Center ("Defendant"). Plaintiff's decedent, a longtime resident of Defendant's nursing home facility, allegedly contracted COVID-19 while a resident at the facility in question (see NYSCEF Doc No. 116, Alonso Aff ¶ 28). 

Plaintiff's Position as to Defendant's Failure to Adopt Appropriate Infection Control Measures
Plaintiff alleges that Plaintiff's decedent died on April 2, 2020 (see id. ¶ 29). Plaintiff asserts that the injuries and resulting death of Plaintiff's decedent were caused through the negligence and nursing home malpractice of Defendant (see id.).
Plaintiff alleges that Defendant failed to adopt and implement appropriate infection control measures. Specifically, Plaintiff alleges that Defendant failed to appropriately separate residents in accordance with local, state and federal guidance, failed to enforce social distancing among residents and staff alike, failed to cancel group activities, such as communal dining, failed to timely restrict visitors and failed to ensure that all residents, as well as health care professionals, wear a cloth face covering (see id. ¶ 30). Plaintiff further posits that Defendant failed to screen all persons entering the building for fever and COVID-19-related symptoms, as well as failed to monitor local, state and federal health guidance related to the coronavirus to safeguard the safety of its residents (see id.).

 Defendant's Motion to Dismiss the Complaint
Defendant filed a motion to dismiss the complaint pursuant to CPLR 3211 (a) (7), which provides, in pertinent part, that a "party may move for judgment dismissing one or more causes of action asserted against him on the ground that . . . 7. the pleading fails to state a cause of action. . . ."
In its motion to dismiss, Defendant seeks an order dismissing the complaint with prejudice on the basis that Defendant is immune from liability pursuant to EDTPA, NY Public Health Law §§ 3080-3082 (see NYSCEF Doc No. 59, Notice of Motion at 1). As an alternate argument, Defendant also posits that the complaint should be dismissed on the ground that Defendant is immune from liability under the federal Public Readiness and Emergency Preparedness Act, 42 USC 247d-6d et seq., and the Court thus lacks subject matter jurisdiction as Plaintiff's claims are preempted by federal law (see id.).

Overview
As detailed below, the Court grants Defendant's motion to dismiss the complaint pursuant to CPLR 3211 (a) (7) based on recent controlling appellate precedents, which precedents resolve the divergence of views arrived at by trial courts regarding the applicability of the EDTPA in this context until the Court of Appeals grapples with the issue.

 Plaintiff Argues that Inasmuch as the EDTPA Was Repealed, Which Repeal Is 
 Retroactive, Defendant's Motion to Dismiss Should Be Denied
Plaintiff contends that insofar as the EDTPA was repealed, which repeal is retroactive, Defendant's motion to dismiss — which is predicated on the EDTPA — should be denied (see NYSCEF Doc No. 116, Alonso Aff ¶¶ 41-43). As explained below, Plaintiff's argument is unavailing as it runs counter to recent appellate precedents.

 The March 7, 2020 Enactment of the EDTPA
On March 7, 2020, the New York State Legislature enacted the Emergency or Disaster Treatment Protection Act, NY Public Health Law §§ 3080-3082, which markedly limited the liability of health care facilities or health care providers for damages claimed to have been sustained in the course of providing health care services in connection with COVID-19. In particular, Public Health Law 3082 (1) (b) provides that immunity will apply where the treatment of the individual was "impacted by the health care facility's . . . decisions or activities in response to or as a result of the COVID-19 outbreak and in support of the state's directives." Notably, Public Health Law § 3082 (2) excludes immunity where harm or damages were caused by an act or omission constituting, inter alia, gross negligence or reckless misconduct by the health care facility or health care provider.

The Road to the Repeal of the EDTPA
Ultimately, on January 30, 2021, the New York State Office of the Attorney General issued a report ("OAG Report") titled "Nursing Home Response to COVID-19 Pandemic," stemming from a preliminary government investigation after multiple allegations of COVID-19-related neglect of nursing home residents across New York State (see NYSCEF Doc No. 132, OAG Report at 5).
The report in question featured the following findings concerning nursing homes' response to the COVID-19 pandemic: (1) "a larger number of nursing home residents died from COVID-19 than [the government] data reflected" (id. at 6); (2) a "lack of compliance with infection control protocols put residents at increased risk of harm during the COVID-19 pandemic in some facilities" (id.); (3) "[i]nsufficient personal protective equipment (PPE) for nursing home staff put residents at increased risk of harm during the COVID-19 pandemic" (id.); (4) "[i]nsufficient COVID-19 testing for residents and staff in the early stages of the pandemic put residents at increased risk of harm in some facilities" (id.); and (5) the "current state reimbursement model for nursing homes gives a financial incentive to owners of for-profit nursing homes to transfer funds to related parties . . . instead of investing in higher levels of staffing and PPE" (id.).
As a result of the New York State Office of the Attorney General's findings in the report issued on January 30, 2021, stemming from a preliminary government investigation after multiple allegations of COVID-19 related neglect of nursing home residents across New York State, Senate Bill S5177 repealing Public Health Law Article 30-D went into immediate effect on April 6, 2021 (see NYSCEF Doc No. 135, New York Senate Bill S5177).

 Plaintiff's Contention that the Repeal
of the EDTPA Is to Be Applied Retroactively
In opposing Defendant's motion to dismiss, Plaintiff, as has been customary in the context of post-COVID-19 litigation, contends that the repeal of the EDTPA is to be applied retroactively to effectuate the legislative intent underpinning the repeal, namely, to "hold[ ] health care facilities, administrators, and executives accountable for harm and damages incurred" as a result of enacting Article 30-D (id.). As the Court of Appeals has held in a non-COVID-19 context, "statutory retroactivity that—even if more substantial—is integral to the fundamental aim of the legislation" may have a rational basis (Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal, 35 NY3d 332, 376 [2020]).
Notably, Senate Bill 5177, repealing Public Health Law Article 30-D, provides that "[r]epealing this article is a much-needed step to holding health care administrators accountable and doing everything possible to stop more preventable deaths from happening" (see NYSCEF Doc No. 135, New York Senate Bill S5177).
To buttress its argument as to the retroactivity of the EDTPA repeal, Plaintiff relies on an affidavit in which New York State Assemblymember Ronald T. Kim, a sponsor of the bill, stated that the "retroactive intent of the subject Bill was made known to the entire voting body during the Assembly Floor Debate on March 4, 2021, prior to the Assembly vote" and that "[a]fter the floor debate, the Bill passed through the Assembly by a vote of 149 to 1" (see NYSCEF Doc No. 138, Kim Aff ¶¶7-8).
To further support the notion that the repeal of the EDTPA is to be applied retroactively, Plaintiff relies — as do most plaintiffs in this context — on a number of New York court decisions holding that the EDTPA was repealed retroactively. For instance, Justice Bruce Cozzens of the Nassau County Supreme Court held as follows regarding the retroactivity of the EDTPA repeal:
In opposition, the plaintiff submits, inter alia, the affidavit of New York State Assemblyman Ronald T. Kim. As the sponsor of the bill repealing the EDTPA, Mr. Kim asserts in his affidavit that the repeal was intended to be applied retroactively to March 7, 2020, "so as to afford victims of nursing home negligence their day in Court." Attached to Mr. Kim's affidavit is a transcript from the New York State Assembly wherein Mr. Kim articulates the intent that the repeal be applied retroactively. Here, the affidavit of Mr. Kim, as supported by the legislative history of the EDTPA, establishes that the EDTPA's repeal was intended to be retroactive, particularly as its remedial nature would be undermined if such repeal was not retroactive (See, Whitehead, supra, citing Lubonty v. U.S. Bank N.A., 34 NY3d 250 [2019]).
(NYSCEF Doc No. 139, Cacace v Grandell Rehabilitation and Nursing Center, Inc., Index No. 610351/2022 [Sup Ct, Nassau County 2022].)
Similarly, Acting Supreme Court Justice Henry F. Zwack of the Columbia County Supreme Court articulated as follows his holding that the EDTPA was repealed retroactively:
Turning next to the defendants' claim of immunity under New York's EDTPA (Public Health Law Article 30, 3080-3082), and New York Executive Order 202.10, the EDTPA has been repealed, and the Court finds the repeal to be retroactive. The EDTPA was repealed less than a year after it was enacted, and there is clear indication, as stated in the [*2]legislative debate on the bill and the commentary (including the affidavit presented of Member of Assembly Ron Kim, one of the sponsors of the bill) that the repeal was to be "retroactively applied to the unfair immunity bill so as to afford nursing home residents and their families their day in court." Further, the plain language of the statute must be interpreted in a manner "so as to avoid an unreasonable or absurd application of the law" (People v Garson, 6 NY3d 604, 614 [2016]). However viewed, if the repeal was not retroactive, its remedial nature would be undermined (Lubonty v US Bank N.A., 34 NY3d 250, 255 [2019]).
(Whitehead v Pine Haven Operating LLC, 75 Misc 3d 985 [Sup Ct, Columbia County 2022]).
Likewise, the Suffolk County Supreme Court held that it "agrees with the holdings in Whitehead, and Robertson, that the repeal of the EDTPA was intended to be retroactive to March 23, 2020" (Byington v North Sea Associates LLC, Index No. 610860/2022 [Sup Ct, Suffolk County 2023].)

Defendant's Position, Rooted Largely on the Immunity Conferred
 Upon it by Virtue of the EDTPA, Is Buttressed by Recent Appellate Authority
As shall appear below, Defendant's position, which hinges largely on the immunity emanating from the EDTPA, is congruent with recent appellate court decisions, and, as such, warrants the dismissal of Plaintiff's complaint on the basis that Defendant is immune from liability under the aegis of the EDTPA. Specifically, Defendant convincingly argues that the complaint cannot plead a viable cause of action against Defendant since Plaintiff's allegations trigger the immunity afforded Defendant pursuant to the EDTPA (see NYSCEF Doc No. 60, Andrews Aff ¶ 8).
Critically, recent decisions emanating from the Second and Third Departments underscore that the EDTPA mandates pre-answer dismissal of claims involving care that was impacted by acts or decisions undertaken by healthcare providers and facilities in response to the COVID-19 pandemic during the time frame pled in Plaintiff's complaint.

 Critical Recent Second Department Pronouncement on the EDTPA Immunity Issue
Significantly, in a case featuring facts similar to those presented herein, the Second Department recently issued on October 4, 2023 a critical decision underscoring that the EDTPA mandates the dismissal of claims arising from care rendered by healthcare facilities in response to the COVID-19 pandemic (see Mera v New York City Health & Hosps. Corp., 220 AD3d 668 [2d Dept 2023]).
In Mera, plaintiff, as administrator of the estate of the decedent, who died on April 5, 2020 from COVID-19, brought suit to recover damages for medical malpractice and wrongful death against the healthcare facilities which treated the decedent before her death (see id.). Plaintiff asserted causes of action alleging, inter alia, medical malpractice and wrongful death (see id.). Defendants, as here, moved pursuant to CPLR 3211 (a) (7) to dismiss the complaint, contending, among other things, that, pursuant to the EDTPA, they were immune from liability for the causes of action alleged in the complaint (see id.).
The Supreme Court denied defendants' dispositive motion. On appeal, the Second [*3]Department reversed the Supreme Court's decision and granted defendants' motion to dismiss the complaint pursuant to CPLR 3211 (a) (7) (id. 670). The Second Department in Mera explained as follows the Legislature's objective in enacting the EDTPA when faced with the COVID-19 pandemic, as well as the immunity conferred on health care facilities by virtue of the statutory scheme in question:
At the outset of the COVID-19 pandemic the New York State Legislature enacted the EDTPA with the stated purpose of "promot[ing] the public health, safety and welfare of all citizens by broadly protecting the health care facilities and health care professionals in this state from liability that may result from treatment of individuals with COVID-19 under conditions resulting from circumstances associated with the public health emergency" (Public Health Law former § 3080).
As is relevant here, the EDTPA initially provided, with certain exceptions, that a health care facility "shall have immunity from any liability, civil or criminal, for any harm or damages alleged to have been sustained as a result of an act or omission in the course of arranging for or providing health care services" as long as three conditions were met: the services were arranged for or provided pursuant to a COVID-19 emergency rule or otherwise in accordance with applicable law; the act or omission was impacted by decisions or activities that were in response to or as a result of the COVID-19 outbreak and in support of the State's directives; and the services were arranged or provided in good faith (id. former § 3082 [1]). The health care services covered by the immunity provision included those related to the diagnosis, prevention, or treatment of COVID-19; the assessment or care of an individual with a confirmed or suspected case of COVID-19; and the care of any other individual who presented at a health care facility or to a health care professional during the period of the COVID-19 emergency declaration (see id. former § 3081 [5]).
(Id. at 669-670.)
The Second Department in Mera explained as follows its grant of defendants' motion to dismiss the complaint pursuant to CPLR 3211 (a) (7) based on the immunity afforded the healthcare facility defendants under the EDTPA:
Here, the plaintiff alleged that the decedent was diagnosed with COVID-19 after arriving at the defendant Elmhurst Hospital Center (hereinafter the hospital) on March 27, 2020, that she was treated for COVID-19 while admitted in the hospital, and that she died from COVID-19 on April 5, 2020. The affirmation of the attending physician who treated the decedent at the hospital, submitted by the defendants in support of the motion, established that the defendants were entitled to immunity under the EDTPA. As the complaint makes no allegations that the defendants' acts or omissions constituted willful or intentional criminal misconduct, gross negligence, reckless misconduct, or intentional infliction of harm, none of the exceptions to the immunity provisions of the EDTPA apply (see id. former § 3082 [2]). Accordingly, the Supreme Court should have granted the defendants' motion pursuant to CPLR 3211 (a) (7) to dismiss the complaint (see Ruth v Elderwood at Amherst, 209 AD3d 1281 [2022]; Crampton v Garnet Health, 73 Misc 3d 543, 561 [Sup Ct, Orange County 2021]; see also Escalera v Favaro, 298 AD2d 552, 553 [*4][2002]).
(Id. at 670.)
Mera was cited by the Second Department recently in Martinez v NYC Health & Hosps. Corp. (223 AD3d 731 [2d Dept 2024]), wherein the Court wrote:
Here, the plaintiff alleges that the decedent was diagnosed with COVID-19 after arriving at Elmhurst Hospital on March 30, 2020, and that he died from COVID-19 on April 9, 2020. The defendants' submissions, including the complaint and the transcript of the plaintiff's hearing pursuant to General Municipal Law § 50-h, conclusively established that the defendants were entitled to immunity under the EDTPA (see Public Health Law former § 3082; Mera v New York City Health & Hosps. Corp., 220 AD3d 668 [2023]; Ruth v Elderwood at Amherst, 209 AD3d at 1291). As the complaint makes no allegations that the defendants' acts or omissions constituted willful or intentional criminal misconduct, gross negligence, reckless misconduct, or intentional infliction of harm, none of the exceptions to the immunity provisions of EDTPA apply (see Public Health Law former § 3082 [2]). (223 AD3d at 732-733.)

 Third Department's Recent Decision on the EDTPA
 Immunity Issue Echoes the Second Department's Mera Decision
Importantly, shortly after the Second Department issued its seminal Mera decision, the Third Department entered the fray, issuing a decision on November 30, 2023 that comports with Mera's holding that the EDTPA mandates the dismissal of claims arising from care rendered by healthcare facilities in response to the COVID-19 pandemic.
In the Third Department decision, much like the case before the Court, the decedent resided in a nursing home - Pine Haven Nursing and Rehabilitation Center - from July 2017 until April 2020, when she died after having contracted COVID-19 (see Whitehead v Pine Haven Operating LLC, 222 AD3d 104 [3d Dept 2023]).[FN1]
Plaintiff, the executor of the decedent's estate thereafter commenced a negligence action, alleging a failure on the part of the nursing home to take proper steps to protect the decedent from the COVID-19 scourge (see id.).
Defendants, as here, moved to dismiss the complaint, arguing that they were entitled to immunity under EDTPA and the Federal Public Readiness and Emergency Preparedness Act (see id.). The Supreme Court determined that defendants were not entitled to immunity on any ground (see id.).
The Third Department in Whitehead expressed as follows the rationale underlying its determination that, irrespective of the eventual repeal of the EDTPA, such statute mandates the dismissal of claims arising from care rendered by healthcare facilities in response to the COVID-19 pandemic:
We turn first to defendants' argument concerning immunity under the EDTPA. Effective March 7, 2020, the EDTPA recognized the public health emergency brought on by the novel coronavirus responsible for causing COVID-19 and sought to "broadly protect[ ] the health care facilities and health care professionals in this state from liability that may result from treatment of individuals with COVID-19 under conditions resulting from circumstances associated with the public health emergency" (Public Health Law former § 3080). Thus, the EDTPA conferred immunity for health care services rendered in response to the COVID-19 pandemic, with limited exceptions (see Public Health Law former §§ 3081, 3082). Inasmuch as the EDTPA was eventually repealed in April 2021 (see L 2021, ch 96, § 1), we are now tasked with determining whether the legislation repealing the EDTPA should be applied retroactively, thereby exposing defendants to potential liability, a matter of first impression for this Court.
Where, as here, legislation " 'would impair rights a party possessed when he [or she] acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed,' " a presumption against retroactivity applies (Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal, 35 NY3d 332, 365 [2020], quoting Landgraf v USI Film Products, 511 US 244, 280 [1994]). There is also a statutory presumption against retroactivity in the case of legislation that repeals an earlier statute (see General Construction Law § 93; People v Roper, 259 NY 635, 635 [1932]). In instances where there is a presumption against retroactivity, a statute will be deemed to apply prospectively, in the absence of plain legislative intent to the contrary (see Majewski v Broadalbin-Perth Cent. School Dist., 231 AD2d 102, 105 [3d Dept 1997], affd 91 NY2d 577 [1998]).
(Id. at 106-107 [emphasis added].)
The Third Department in Whitehead explained as follows its determination that the 2021 repeal of EDTPA should not apply retroactively, while addressing Assemblymember Ronald T. Kim's statements on the retroactivity issue that plaintiffs have repeatedly seized upon in this context:
Similarly, the ultimate repeal of the EDTPA contained no express indicator of retroactivity - rather, the Legislature simply stated that the repeal would "take effect immediately" (L 2021, ch 96, § 2), a phrase that is equivocal at best in retroactivity analysis (see Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 584 [1998]; Ruth v Elderwood at Amherst, 209 AD3d at 1287-1288).
As for the legislative history of the repeal, the sponsoring memoranda do not directly address the issue of retroactivity (see Assembly Mem in Support, Bill Jacket, L 2021, ch 96; Senate Introducer's Mem in Support of 2021 NY Senate Bill S5177, enacted as L 2021, ch 96; Ruth v Elderwood at Amherst, 209 AD3d at 1288-1289). With regard to the legislative floor debates, which "may be accorded some weight in the absence of more definitive manifestations of legislative purpose" (Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d at 586 [internal quotation marks and citation omitted]), the Assembly sponsor indicated his personal belief that the repeal should be retroactive but acknowledged that the bill as drafted contained no retroactivity language and repeatedly stated that the matter would ultimately be left to the courts to resolve, an assertion echoed [*5]by several of his colleagues (see NY Assembly Debate on 2021 NY Assembly Bill A3397, Mar. 4, 2021 at 45-46, 49, 53-54, 57, 60, 62-63, 67-68, 77-78). Numerous members indicated an intent, expectation or hope that the repeal would be applied prospectively, and two members of the Health Committee stated that the committee understood that the repeal would not be retroactive (see NY Assembly Debate on 2021 NY Assembly Bill A3397, Mar. 4, 2021 at 45, 48, 60, 65-67, 73, 82, 84, 86, 90-93). The only comment on the Senate floor regarding this issue was one senator's statement that her understanding was that the repeal would be prospective and liability would be applied going forward (see NY Senate Debate on 2021 NY Senate Bill S5177, Mar. 24, 2021 at 1835). On balance, the legislative history of the repeal weighs against its retroactive application.
(Id. at 108.)
The Third Department in Whitehead explained as follows the basis for its finding that the eventual repeal of the EDTPA ought not apply retroactively:
Turning to plaintiff's argument that retroactivity is appropriate because the repeal was remedial in nature, "[c]lassifying a statute as 'remedial' does not automatically overcome the strong presumption of prospectivity since the term may broadly encompass any attempt to supply some defect or abridge some superfluity in the former law" (Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d at 584 [internal quotation marks and citation omitted]; see Raparthi v Clark, 214 AD3d 613, 614 [1st Dept 2023]; Matter of Mills v Staffking [Hidden Val.], 271 AD2d 146, 148 [3d Dept 2000]). Based upon all of the foregoing, and noting that the retroactive application of the repeal of the EDTPA would merely punish healthcare providers "for past conduct they cannot change — an objective [that has been] deemed illegitimate as a justification for retroactivity" (Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal, 35 NY3d at 384), we hold that the repeal of the EDTPA was not retroactive (see Ruth v Elderwood at Amherst, 209 AD3d at 1291).
(Id. at 109.)
In Whitehead, the Third Department articulated as follows the logical underpinning for its determination that the nursing home is entitled to immunity under the EDTPA, warranting the dismissal of plaintiff's suit, including plaintiff's cause of action for gross negligence notwithstanding the statutory carveout to EDTPA immunity for claims of gross negligence, owing to the Third Department's finding that plaintiff's allegations of gross negligence amounted, as here,[FN2]
to scarcely more than mere legal conclusions bereft of factual specificity:
Given this ruling, we must next determine whether defendants established that they are entitled to the immunity protection conferred by the EDTPA, such that plaintiff's remaining causes of action should be dismissed. In their dismissal motion, defendants contended that the EDTPA shielded them from liability and that plaintiff had therefore failed to state a cause of action, while plaintiff countered that even if the repeal of the EDTPA was not retroactive, defendants were not entitled to invoke the protections of the EDTPA because its terms did not apply to defendants.
. . . Defendants, in support of their motion, submitted the sworn affidavit of Valerie Lattrell, director of nursing at Pine Haven Nursing and Rehabilitation Center. Lattrell affirmed that, beginning in early March 2020, the nursing home staff administered numerous state and FDA-approved medical supplies on a daily basis in order to monitor, diagnose, treat and prevent the spread of COVID-19, and did so in good faith. Lattrell also averred that all infection control policies and activities were conducted based upon informed decision-making, considering the availability, perceived efficacy and anticipated future availability of products as well as the evolving federal and state regulatory guidance. According to Lattrell, decedent's care was impacted by the facility's response to COVID-19 in that her visitation was restricted; employees who provided her care were screened for COVID-19;[FN3]her dining services were restricted to in-unit tray service; she was examined by an infectious disease doctor; she was administered a COVID-19 test and placed on droplet precautions pending the result of that test; her vital signs were monitored; and she was administered medications and treatments for COVID-19 and to mitigate the effects thereof. Lattrell also noted that an inspection of the facility by the Department of Health in April 2020 revealed zero deficiencies relating to management of COVID-19 and compliance with applicable procedures.
The Lattrell affidavit unquestionably establishes that the care provided to decedent "occur[red] in the course of arranging for or providing health care services and the treatment of [decedent was] impacted by the health care facility's or health care professional's decisions or activities in response to or as a result of the COVID-19 outbreak and in support of the state's directives" (Public Health Law former § 3082 [1] [b]) and, further, that such health care services were provided in good faith (see Public Health Law former § 3082 [1] [c]), as required to demonstrate defendants' entitlement to immunity from civil liability (see Public Health Law former § 3082 [1]). The two-page excerpt of decedent's medical chart submitted by plaintiff in opposition to the motion fails to sufficiently refute Lattrell's sworn allegations regarding decedent's care. Additionally, with specific respect to plaintiff's cause of action for gross negligence—a statutory carveout to EDTPA immunity—this claim consists of nothing more than "bare [*6]legal conclusions with no factual specificity [,which] do not suffice to withstand a motion to dismiss" (Mid-Hudson Val. Fed. Credit Union v Quartararo & Lois, PLLC, 155 AD3d 1218, 1219 [3d Dept 2017], affd 31 NY3d 1090 [2018]; see Godfrey v Spano, 13 NY3d 358, 373 [2009]). Accordingly, defendants were entitled to dismissal of all causes of action.
(Id. at 109-111.)

 Other Appellate Division Authority
In Ruth v Elderwood at Amherst (209 AD3d 1281 [4th Dept 2022]), the Fourth Department likewise held that the repeal of the EDTPA was not to be applied retroactively. This was the most extensive analysis by an Appellate Division of the retroactivity issue:
On the merits of the appeal, plaintiff contends that the court erred in granting defendants' motion to dismiss the complaint based on the immunity conferred by EDTPA because, contrary to the court's determination, the repeal of that statute applies retroactively to remove liability protection for conduct that occurred while EDTPA was in effect.
When conducting a retroactivity analysis, a court must first assess whether applying the new law to conduct that occurred prior to its enactment "truly implicates the concerns historically associated with retroactive application of new legislation" (Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal, 35 NY3d 332, 365 [2020], rearg denied 35 NY3d 1079, 1081 [2020]). In that regard, "application of a new statute to conduct that has already occurred may, but does not necessarily, have 'retroactive' effect upsetting reliance interests and triggering fundamental concerns about fairness" (id.). In determining whether legislation has retroactive effect, " 'the court must ask whether the new provision attaches new legal consequences to events completed before its enactment' " (American Economy Ins. Co. v State of New York, 30 NY3d 136, 147 [2017], cert denied 584 US —, 138 S Ct 2601 [2018]). "A statute has retroactive effect if 'it would impair rights a party possessed when [the party] acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed,' thus impacting 'substantive' rights" (Regina Metro. Co., LLC, 35 NY3d at 365; see Landgraf v USI Film Products, 511 US 244, 278-280 [1994]; see also General Construction Law § 93). Therefore, "the 'extent of a party's liability, in the civil context as well as the criminal, is an important legal consequence' in determining retroactivity" (Regina Metro. Co., LLC, 35 NY3d at 367). "On the other hand, a statute that affects only 'the propriety of prospective relief' or the nonsubstantive provisions governing the procedure for adjudication of a claim going forward has no potentially problematic retroactive effect even when the liability arises from past conduct" (id. at 365). Where legislation, "if applied to past conduct, would impact substantive rights and have retroactive effect, the presumption against retroactivity is triggered" (id. at 370).
When the presumption is triggered, "a statute is presumed to apply only prospectively" (id.). "This 'deeply rooted' presumption against retroactivity is based on '[e]lementary considerations of fairness [that] dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly' " (id.). "[C]areful [*7]consideration of retroactive statutes is warranted because '[t]he [l]egislature's unmatched powers allow it to sweep away settled expectations suddenly and without individualized consideration' and '[i]ts responsivity to political pressures poses a risk that it may be tempted to use retroactive legislation as a means of retribution against unpopular groups or individuals' " (id.).
"In light of these concerns, [i]t takes a clear expression of the legislative purpose . . . to justify a retroactive application of a statute . . . , which assures that [the legislative body] itself has affirmatively considered the potential unfairness of retroactive application and determined that it is an acceptable price to pay for the countervailing benefits" (id. [internal quotation marks omitted]; see People v Galindo, 38 NY3d 199, 207 [2022]; Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 584 [1998]; Jacobus v Colgate, 217 NY 235, 240 [1916, Cardozo, J.]). "The ultimate question . . . , therefore, is one of statutory interpretation: whether the legislature has expressed a sufficiently clear intent to apply the [legislation] retroactively" (Regina Metro. Co., LLC, 35 NY3d at 370). "There is certainly no requirement that particular words be used—and, in some instances, retroactive intent can be discerned from the nature of the legislation" (id.). "But the expression of intent must be sufficient to show that the legislature contemplated the retroactive impact on substantive rights and intended that extraordinary result" (id. at 370-371).
Plaintiff first asserts that applying the repeal of immunity previously conferred under state law to conduct that occurred when EDTPA was in effect would not impact defendants' substantive rights, and thus the presumption against retroactivity is not triggered, because defendants at all times were bound by federal laws and regulations under which they remained liable for negligent nursing home care. We reject that assertion.
Even assuming, arguendo, that certain defendants remained subject to potential or actual federal enforcement remedies for any misconduct similar or equivalent to that alleged in the complaint here (see e.g. 42 CFR 483.10, 483.12, 483.25, 488.406), we conclude that applying the repeal of the immunity conferred by EDTPA to defendants' past acts or omissions would "expand[ ] the scope of [defendants'] liability significantly based on conduct that was inoculated by the old law" (Regina Metro. Co., LLC, 35 NY3d at 368 [emphasis added]). In particular, at the time of the events alleged in the complaint, EDTPA provided health care facilities and professionals with immunity from, inter alia, civil liability for negligence and medical malpractice while providing health care services under the requisite conditions during the COVID-19 emergency (see Public Health Law former § 3082 [1], [2]). In other words, even if certain defendants here faced the prospect of federal regulatory penalties, they were otherwise protected from liability in state civil actions for any harm or damages caused by acts or omissions other than intentional criminal misconduct or infliction of harm, gross negligence, or reckless misconduct (see id.). Thus, applying the repeal to remove immunity for conduct that occurred when EDTPA was in effect would "undoubtedly impose . . . a new disability in respect to past events" and "clearly increase[ ] the scope of liability for past wrongs" (Regina Metro. Co., LLC, 35 NY3d at 367 [internal quotation marks omitted]). Defendants would now, in addition to any federal regulatory penalties, face entirely separate liability in state civil actions for conduct that was inoculated by EDTPA. We have considered plaintiff's [*8]remaining assertions on this issue and conclude that they lack merit.
We thus conclude that applying the repeal of EDTPA to the allegations in the complaint would have retroactive effect "by impairing rights [defendants] possessed in the past, increasing their liability for past conduct and imposing new duties with respect to transactions already completed" (Regina Metro. Co., LLC, 35 NY3d at 369). "Because the [repeal of EDTPA], if applied to past conduct, would impact substantive rights and have retroactive effect, the presumption against retroactivity is triggered" (id. at 370).
Plaintiff nonetheless asserts that, even though the text of the repeal legislation does not expressly provide for retroactive application, the presumption against retroactivity is overcome because the legislative history and the nature and circumstances of the legislation provide a clear expression of the legislature's intent for the repeal to apply retroactively. We reject that assertion as well.
Initially, the parties dispute whether the repeal of EDTPA constitutes remedial legislation. We agree with defendants, however, that even assuming the repeal of EDTPA is properly classified as remedial, that classification is largely immaterial. Courts have "limit[ed] the continued utility of the tenet that new 'remedial' statutes apply presumptively to pending cases" (Regina Metro. Co., LLC, 35 NY3d at 365). Moreover, "[c]lassifying a statute as 'remedial' does not automatically overcome the strong presumption of prospectivity since the term may broadly encompass any attempt to 'supply some defect or abridge some superfluity in the former law' " (Majewski, 91 NY2d at 584; see Gottwald v Sebert, 203 AD3d 488, 488-489 [1st Dept 2022]). The Court of Appeals has thus cautioned against placing too much reliance on the remedial nature of legislation, noting that such " '[g]eneral principles may serve as guides in the search for the intention of the [l]egislature in a particular case but only where better guides are not available' " (Majewski, 91 NY2d at 584). To that end, inasmuch "[a]s the clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the language itself" (id. at 583), and "legislative history may also be considered as an aid to interpretation" (Regina Metro. Co., LLC, 35 NY3d at 352; see Majewski, 91 NY2d at 584).
Here, "[n]othing in the text 'expressly or by necessary implication' requires retroactive application of the [repeal]" (Galindo, 38 NY3d at 207, quoting Majewski, 91 NY2d at 584). First, as plaintiff acknowledges, the text of the repeal legislation, unlike the legislation originally enacting EDTPA (see L 2020, ch 56, § 1; part GGG, § 2), does not contain an express statement requiring retroactive application (see L 2021, ch 96, §§ 1-2). Second, plaintiff's claim that we may infer retroactive intent from the remedial purpose of the repeal coupled with the sense of urgency with which the legislature acted in having the repeal take effect immediately is without merit. Although the text of the legislation provides that the repeal is to "take effect immediately" (L 2021, ch 96, § 2), "the date that legislation is to take effect is a separate question from whether the [legislation] should apply to claims and rights then in existence" (Majewski, 91 NY2d at 583). "While the fact that a statute is to take effect immediately 'evinces a sense of urgency,' 'the meaning of the phrase is equivocal' in an analysis of retroactivity" (id., quoting Becker v Huss Co., 43 NY2d 527, 541 [1978]; see Gottwald, 203 AD3d at 489). Consequently, the assumption that the repeal of EDTPA is remedial and the fact that the legislature provided that the repeal shall take effect immediately "[do] not support the [*9]conclusion that the legislature intended retroactive application of the [repeal]" (Gottwald, 203 AD3d at 489).
Plaintiff nevertheless maintains that the legislative sponsors' memoranda demonstrate that the legislature intended the repeal to apply retroactively. We reject that assertion.
The memoranda indicate that the purpose of the legislation was to repeal EDTPA "with the intent of holding health care facilities, administrators, and executives accountable for harm and damages incurred" (Assembly Mem in Support, Bill Jacket, L 2021, ch 96; see also Senate Introducer's Mem in Support of 2021 NY Senate Bill S5177, enacted as L 2021, ch 96). As justification for the repeal, the memoranda provide, in relevant part, that "[a]s the COVID-19 pandemic has progressed in New York State, it is now apparent that negligence by administrators and executives of nursing homes has occurred at an extraordinary degree. The consequences have been tragic: as of early May 2020, . . . thousand[s] of New York's elderly and most vulnerable residents have succumbed to this disease, and to date, there has been zero accountability nor transparency for these preventable deaths . . . In particular, [EDTPA] egregiously uses severe liability standards as a means to insulate health care facilities and specifically, administrators and executives of such facilities, from any civil or criminal liability for negligence. Repealing this article is a much-needed step to holding health care administrators accountable and doing everything possible to stop even more preventable deaths from happening" (id.; see also Senate Introducer's Mem in Support of 2021 NY Senate Bill S5177, enacted as L 2021, ch 96).
We conclude that "[t]he memorand[a] submitted by the [legislators] who introduced the bill . . . [are], at best, inconclusive" on the issue of retroactivity (Matter of Berson [Corsi], 283 App Div 190, 193 [3d Dept 1953]; see e.g. Matter of Walsh v New York State Comptroller, 34 NY3d 520, 527 [2019]; Matter of Niagara Mohawk Power Corp. v Public Serv. Commn. of State of NY, 69 NY2d 365, 374 [1987], rearg denied 69 NY2d 1038 [1987]; see generally Simmons v Trans Express Inc., 37 NY3d 107, 114 [2021]), and thus fall far from "a clear expression of the legislative purpose . . . to justify a retroactive application" of the repeal (Regina Metro. Co., LLC, 35 NY3d at 370 [internal quotation marks omitted]). In particular, although the memoranda refer to holding facilities, administrators, and executives accountable for harm and damages "incurred"—a past tense construction that generally relates to past transactions (see Agawam Bank v Strever, 18 NY 502, 508 [1859])—the absence of temporal language renders the memoranda equally susceptible to the interpretation that the legislature, recognizing the consequences of its enactment of EDTPA, intended to reverse course on policy and hold nursing home facilities accountable for any harm and damages "incurred" by their residents going forward (see Matter of Lee E. B., 39 NY2d 962, 963 [1976]). Moreover, while the memoranda are ambiguous regarding the time period for which the legislature sought to now hold nursing home facilities accountable for negligence, the memoranda are otherwise unambiguous that the repeal of EDTPA was thought to be a step toward stopping additional preventable deaths from happening in the future (see Assembly Mem in Support, Bill Jacket, L 2021, ch 96; Senate Introducer's Mem in Support of 2021 NY Senate Bill S5177, enacted as L 2021, ch 96). In other words, the memoranda are clear on the prospective application of the repeal and provide, at most, only the faintest glimmer of intent to remove the immunity conferred by EDTPA [*10]retroactively. Consequently, "[t]he language of the [repeal] does not clearly indicate that it should be applied retroactively, nor does examination of the available legislative [sponsors' memoranda] offer up any definitive expression that it was intended to have . . . retrospective application" (Matter of Thomas v Bethlehem Steel Corp., 63 NY2d 150, 154 [1984]).
Contrary to plaintiff's further assertion, we agree with defendants that the legislative floor debates also support the conclusion that the legislature intended the repeal to apply prospectively only rather than retrospectively. Although the declarations of legislators during floor debates "must be cautiously used" as indicators of legislative intent, "these averments 'may be accorded some weight in the absence of more definitive manifestations of legislative purpose' " (Majewski, 91 NY2d at 586).
Here, during the floor debate in the Senate, the first senator to speak in support of the bill expressed her understanding that the repeal was "prospective" and would "apply going forward" by restoring the standards of liability to the health care profession in light of the lessons learned over the prior year when EDTPA was in place (NY Senate Debate on Senate Bill S5177, Mar. 24, 2021 at 1834-1836). The sponsor of the bill in the Senate, who was the only other senator to speak regarding the bill and did so after the first senator, did not directly address retroactive application, nor did she dispute the first senator's stated understanding that the repeal was to apply prospectively (see id. at 1836-1838).
During floor debate in the Assembly, although the sponsor of the bill expressed his belief that the repeal of the immunity conferred by EDTPA should apply retroactively, especially with respect to corporate entities and executives, he repeatedly emphasized that, given the absence of express language in the text of the legislation, it would ultimately be left up to the courts to decide whether the repeal of the liability protections should be applied retroactively (see NY Assembly Debate on Assembly Bill A3397, Mar. 4, 2021 at 45, 48-49, 62-63, 67-68). Other members, however, expressed concern that retroactive application of the repeal legislation would expose frontline health care workers to liability for treatment they provided at the beginning of the pandemic when far less was known about how to provide appropriate treatment for the novel virus and such workers were tasked with providing care under extraordinary circumstances (see id. at 44-46, 50-52, 58, 62, 64-67, 70-72, 84-86). In light of those concerns, and on the ground that the repeal of immunity and the accompanying return to standard liability norms was justified by the fact that medical knowledge and treatment protocols had developed in the year since the onset of the pandemic, the other members who spoke during the debate expressed nearly uniform understanding that the repeal would apply prospectively only, not retroactively (see id. at 45, 48, 53, 58-60, 65-66, 73, 77-78, 82, 84-86, 90-93). Some members also agreed with the sentiment that the question of retroactive application would ultimately be decided by the courts (see id. at 53-54, 60, 68, 77-78).
The floor debates in the Senate and Assembly thus strongly support the conclusion that the legislature intended the repeal to apply prospectively only and, in any event, the debates contain "nothing that approaches any type of 'clear' expression of legislative intent concerning retroactive application" (Majewski, 91 NY2d at 589). Even though certain members of the Assembly may have sought to have the issue of retroactivity [*11]"deliberately left to the courts" (Becker, 43 NY2d at 541), the legislative history shows that the legislature considered retroactive application of the repeal and yet provided the courts with no clear pronouncement of its intent to recalibrate rights and change public policy by retroactively removing the immunity conferred by EDTPA (see Morales v Gross, 230 AD2d 7, 10-11 [2d Dept 1997]; see generally Regina Metro. Co., LLC, 35 NY3d at 348). Moreover, to the extent that plaintiff seeks to rely on the affidavit of the Assembly sponsor submitted in other litigation subsequent to the repeal of EDTPA as evidence of legislative intent, we note that "postenactment statements or testimony by an individual legislator, even a sponsor, is [generally] irrelevant," and here we discern no extraordinary circumstances that would warrant consideration of the affidavit (Civil Serv. Empls. Assn. v County of Oneida, 78 AD2d 1004, 1005 [4th Dept 1980], lv denied 53 NY2d 603 [1981]). Consequently, the expressions of legislative intent are insufficient to show that the legislature, having "contemplated the retroactive impact on substantive rights," nonetheless "intended that extraordinary result" (Regina Metro. Co., LLC, 35 NY3d at 370-371).
Based on the foregoing, we conclude that the repeal of EDTPA does not apply retroactively. In light of that determination, there is no need to analyze whether retroactive application of the repeal would comport with the constitutional requirements of due process (cf. id. at 374-375). The court thus properly determined that defendants were entitled to the immunity from liability conferred by EDTPA.

 (209 AD3d at 1284-1291.)
Conclusion
This Court is bound to apply the foregoing Appellate Division precedents (see Mountain View Coach Lines, Inc. v Storms, 102 AD2d 663 [2d Dept 1984]) concerning applicability of the EDTPA. The Court declines to adopt Plaintiff's entreaties to hold that the repeal of the EDTPA was retroactive despite appellate authority.
Neither should this Court strain to find minute differences between the controlling precedent and the facts of a particular case when it is apparent that appellate authority is eminently clear with respect to an issue of statewide importance. Unless it is clear that the facts are so different in a case before it, a trial court has a duty to follow precedent on an issue of law where the appellate courts have afforded the issue due consideration. "In applying an Appellate Division precedent, it is not open to the Supreme Court to consider whether the precedent was correctly established—that is a matter that may be considered by . . . the Court of Appeals" (Maple Med., LLP v Scott, 191 AD3d 81, 90 [2d Dept 2020]). The issue of the EDTPA's applicability percolated among the state's trial courts. There now being no contrary appellate decisions on the issue of the retroactive effect of the repeal of the EDTPA, this Court elects to respect the heretofore described appellate determinations on the issue. 
Any issue regarding applicability of the aforementioned federal legislation is academic.
Accordingly, it is hereby ORDERED that Defendant's motion to dismiss the complaint, rooted on the immunity conferred upon Defendant by virtue of the EDTPA, is granted. The Clerk shall enter judgment accordingly.
E N T E R
AARON D. MASLOW
Justice of the Supreme Court of the State of New York

Footnotes

Footnote 1:. This is the case determined at the trial level in Supreme Court, Columbia County, as discussed supra at 7-8.

Footnote 2:Plaintiff's following formulaic allegation in the complaint in the present case concerning the purported gross negligence of Defendant Carmel Richmond Nursing Home, Inc. aptly illustrates the paradigmatic conclusory gross negligence allegation devoid of factual specificity addressed by the Third Department in Whitehead: "Anna Bologna's death as a resident/patient was a direct result of defendant's failures to take measures to protect her at the nursing home facility from the deadly COVID-19 virus, and because of their negligence, gross negligence, and nursing home malpractice" (see NYSCEF Doc No. 1, Complaint ¶113).

Footnote 3:Much like in the Third Department's Whitehead decision, Defendant in the case before the Court submitted an affidavit establishing that the patient's care was impacted by Defendant's response to the COVID-19 pandemic (see NYSCEF Doc No. 61, Francis Aff ¶ 16).